[No. 439. Decided May 11, 1892.]

PERRY G. LUZADER *et al.*, *Appellants*, v. W. P. SARGEANT *et al.*, *Respondents.*

SCHOOL DISTRICTS—ISSUANCE OF BONDS—ELECTION—SUFFICIENCY OF NOTICE—REGISTRATION—LIMIT OF INDEBTEDNESS.

The fact that a board of school directors has repeatedly called elections for authority to issue school bonds will not invalidate their issue after an election has been held which granted the necessary authority.

Under Laws 1889-90, p. 46, prescribing that the question of issuing school bonds should be submitted to an election held in the manner provided by law for holding special school elections, and under Laws 1891, p. 255, § 18, prescribing that special elections shall be called in the manner provided for calling annual elections, a ten days' notice, posted in three places, is sufficient notice of an election submitting the issuance of school bonds.

The law requiring registration of voters has no application to school elections.

Where the complaint in an action to enjoin the issuance of school bonds alleges that their issuance will increase the indebtedness of the school district to an amount exceeding one and one-half per cent. of the taxable property therein, it will be presumed from the fact that a certain part of the proceeds of the bonds is to be devoted to paying outstanding indebtedness of the district, that the indebtedness will be kept within the one and one-half per cent. limit, in which case the casting of certain illegal votes at such election will not invalidate the issue of bonds if the rejection of the illegal votes would still leave a majority in favor thereof.

*Appeal from Superior Court, Pierce County.*

Action by Perry G. Luzader, W. W. Brown and D. L. Gill against W. P. Sargeant, J. H. Sheets and Perry G. Luzader, directors of school district No. 46 of Pierce county, State of Washington, and James C. Fairchild, treasurer of said county, to restrain the issuance of bonds for said school district. Plaintiffs appeal from a judgment for defendants.

*James Wickersham and Charles E. Taylor,* for appellants.
*Tripp, Town, Likens & Dillon,* for respondents.

The opinion of the court was delivered by

STILES, J.—1. Whatever criticism might be justly visited upon the school directors for calling and recalling elections, we cannot say that the result of the last election did not authorize the issuance of the bonds. Such action as that complained of might perhaps sustain proceedings to

prevent an election; but after the election has been held,
if it were fair and legal in other respects, it would not be-
come a court to interfere, in the absence of any statutory
provision on the subject.     The gound for a court's inter-
ference to prevent an election, under such circumstances,
if it exist at all, we think, must be not the malicious ac-
tion of the directors in repeatedly *calling* new elections
immediately after defeat in former ones, but the reckless
and fruitless expenditure of the funds of the district in the
proposed holding of an election where the same proposi-
tion has been recently and repeatedly defeated. But when
the election has been held and the proposition is carried,
any such cause of intervention has ceased to have weight,
because the expenditure has been made and the election
has not been fruitless.

2. It is argued that the election was not free or fair,
and that the electors voted for the bonds, if a majority of
them did so, through disgust with the whole proceeding,
or through intimidation in view of the directors' threat
that they would keep on calling elections until their plan
was adopted.    But that state of facts is not in the com-
plaint, except by inference in the allegation that the
threats were made.

3. The election was held June 20, 1891, under a notice
dated June 5th.    Three copies only of the notice were
posted in the district, and the full time of notice was four-
teen days.    It is conceded that the matter of notice was
regulated by the statute, and that the statute must be com-
plied with.  Appellant maintains that these special school
elections could only be held after twenty days' notice
posted in five places, as prescribed by § 45 of the general
school law of 1886 (Acts, p. 17).

The act authorizing school districts to issue bonds (Laws
1889–90, p. 46) prescribed that the question of issuance
should be submitted to an election held in the manner pre-

scribed by law for the holding of special school elections.
As the general school law of that year appears to have
made no provision for the notice to be given of the hold-
ing of special elections, it may be conceded that if there
were no other law in force, the act of 1886 would control;
although the purpose of the legislature to make the act of
1890 the only law on the subject of schools and school
elections appears rather strongly by § 92. But § 18 of the
act of March 7, 1891 (p. 255), covers the subject matter by
prescribing that special elections shall be called in the
manner provided for calling annual elections, which is,
under § 55 of the act of 1890, by ten days' notice posted
in three places. Still, however, appellants maintain that
the notice was insufficient, because the election was ordered
June 2, 1891, before the act of that year had gone into
effect. But under the statute no weight seems to have
been given to the matter of ordering the election. A gen-
eral election requires no order; the clerk's notice is orig-
inal with him. In this case the act of 1891 went into
operation on the 5th day of June, the day the notice was
dated and therefore the time was not less than ten days
with a posting in three places only.

We do not attach the importance, urged by the appel-
lant, to the bonding act of 1890 in the matter of calling
these elections. Had that law prescribed that bond elec-
tions should be called " in the manner provided for calling
special school elections by the act of 1886," the case
would have been different. That would have been an in-
corporation of the act of 1886 into the new act ; but the
language used merely shows that the law of the subject is
to control, as it may be changed from time to time.

4. Was registration necessary? We conclude from a
comparison of the general school law of 1890, and the
registration law of that year, that it was not. No provis-
ion whatever is made in the latter law for furnishing poll
books to school directors; the duty of the clerk is limited

to providing them for delivery to an election judge of a "ward or precinct." School elections are not held by either wards or precincts, and the proceedings upon a challenge are entirely different; moreover, women can vote at school elections, but they cannot be registered at all. The word "district" in § 17 of the law might seem to have no direct application unless it be to a school district, but it may refer to the election of superior judges who preside over more than one county, or to that of members of the legislature. This holding does not in the least disturb that declared in *Smith v. Board of Commissioners*, 45 Fed. Rep. 725. The third section of the act for the organization, etc., of municipal corporations expressly required that the election therein provided for should be conducted in accordance with the general election laws of the state; but we find the general election law (1890, p. 400) as expressly excludes school elections from the operation of that law.

5. Section 2 of the act authorizing school districts to issue bonds, provides for their issuance upon a majority vote in their favor, unless the proposed bonds will increase the district indebtedness to a sum more than one and one-half per cent of the taxable property therein, when the majority must be three-fifths; but from the gross amount of the bonds there may be deducted any outstanding indebtedness to be redeemed with the proceeds of the bonds. The complaint shows that 254 votes were cast at the election in this instance, of which 155 were in favor and 99 were against the bond issue. There was, therefore, a three-fifths majority for the bonds. Against this showing it is alleged that "a large number of illegal votes were cast," to wit, more than ten, by persons not residents of the district for the bonds, and that if these votes were rejected, there would not be a three-fifths majority remaining; also, that "a number of persons who were under the age of twenty-one years" voted for thbe onds; also, that eighty

women, who were unregistered, voted, of whom fifty were for and thirty against the bonds. The women were entitled to vote. (Acts of 1890, p. 377.)

This leaves the allegations that ten non-residents, and a number of persons under twenty-one years of age, voted illegally for the bonds. The second allegation was too indefinite to be considered. The first one the court also held insufficient, because the persons who voted as alleged were not named. Whether this be a material error (if, indeed, it be an error at all, which we shall not decide) will depend on whether the exclusion of ten votes would have changed the result. The fourteenth allegation of the complaint was as follows:

"That if the bonds are issued by said district in the sum of $5,475, the indebtedness of school district No. 46 will be thereby increased to an amount exceeding one and one-half per centum of the taxable property of such school district."

But it appears that out of the proceeds of the bonds $450 was to be devoted to paying outstanding indebtedness of the district, and it is not stated whether when that sum has been thus used the debt of the district, including the bonds, will be more than the one and one-half per cent. The presumption is that it will not be, and therefore only a majority vote was necessary, and the rejection of the ten illegal votes would not change the result. Nor do we think that any complaint in such a case would be sufficient unless it stated the amount of the taxable property in the district.

Some other points were argued, but they are not material to the decision of the case.

The judgment of the superior court sustaining a demurrer to the complaint and dismissing the action is therefore affirmed.

ANDERS, C. J., and HOYT and SCOTT, JJ., concur.

DUNBAR, J., not sitting.