THE CITY OF ST. LOUIS v. THE R. J. GUNNING COMPANY, *Appellant.*

### Division Two, March 23, 1897.

1. **Criminal Law**: VIOLATIONS OF ST. LOUIS ORDINANCES: APPEALS, WHEN TAKEN. Appeals from convictions before the police judge for violation of the ordinances of the city of St. Louis are to be taken in the same time as appeals from convictions before justices of the peace in other parts of the State.

2. ———: ———: ———: STATUTE. At the time of the adoption of the charter of the city of St. Louis the statute provided that appeals from justices of the peace could be taken within ten days. The said charter provided that appeals from the judgments of the police justice of St. Louis shall lie in like manner as is provided by law for appeals from justices of the peace in criminal cases. *Held,* that the language of the charter means that appeals from judgments of the police judge shall be governed by the statute in force at the time the appeal is taken, and not by the statute in force at the time the charter was adopted.

3. **Criminal Law**: WHEN APPEALS SHOULD BE TAKEN. The affidavit for an appeal from the judgment of a justice of the peace or of the police judge of St. Louis, should be filed the same day of the conviction, unless satisfactory reasons for delay appear. (Following *State v. Anderson,* 84 Mo. 524, and overruling *State v. Clevenger,* 20 Mo. App. 628.)

4. ———: ———: JURISDICTION: APPEARANCE. The voluntary appearance of both parties in the appellate court, when the appeal has not been taken in time, does not give such court jurisdiction of the cause. Unless the appeal is taken within the statutory time, the case is *res adjudicata.*

5. ———: ———: THE WORD "IMMEDIATELY." The word *immediately* as used in the statute governing appeals from justices of the peace in criminal cases is to be understood as meaning "within such convenient time as is requisite for doing the thing."

*Appeal from the St. Louis Court of Criminal Correction.*
HON. JAMES R. CLAIBORNE, Judge.

REVERSED.

*Jos. S. Laurie* for appellant.

(1) The ordinance is void as being unreasonable and repugnant to fundamental rights. *State v. Clark*, 54 Mo. 17; *St. Louis v. Railroad*, 89 Mo. 44; *City of Tarkio v. Cook*, 120 Mo. 1. (2) All municipal by-laws passed under the implied power to make by-laws or under a general charter power to make such by-laws as are necessary for the public welfare, must be reasonable in their character and effect and not repugnant to fundamental rights of citizens. Dillon, Mun. Corp. [4 Ed.], sec. 319; Tied. Mun. Corp., sec. 150. (3) This is a question to be determined, not by a jury, but by the court as a matter of law. *City of St. Louis v. Weber*, 44 Mo. 547; Beach, Mun. Corp., sec. 542. Such unreasonableness may be shown by evidence, but when it appears on the face of the ordinance evidence is unnecessary. *Id.*, sec. 513. (4) In determining the reasonableness of an ordinance the court must take into consideration all the circumstances of the case, the necessity for the ordinance, the object sought by its enactment and its general operation and effect. Tied. Mun. Corp., sec. 159; Dillon, Mun. Corp. [4 Ed.], sec. 327; *Corrigan v. Gage*, 68 Mo. 541; Cooley, Const. Lim. [6 Ed.], p. 241. (5) An owner of property can not be prohibited by an ordinance from conducting thereon a lawful business, unless the health, safety or comfort of the surrounding community requires its exclusion. *Ex parte Whitwell*, 98 Cal. 73; *Railroad v. City of Jacksonville*, 67 Ill. 40; *St. Louis v. Weber*, 44 Mo. 550; *City of St. Louis v. Fitz*, 53 Mo. 582. (6) Said ordinance was unnecessary. It is "but a limitation without reason or necessity and can not be enforced." *Crawford v. City of Topeka*, 52 Kan. 756. (7) It does not tend to promote the safety of the public. (8) It

arbitrarily excludes all material other than sheet metal.
(9) The ordinance is repugnant to fundamental rights.

*W. C. Marshall* for respondent.

(1) Judgment in this case having been entered on
the twenty-fourth of October, 1893, and no affidavit
for an appeal having been filed on that day, and no
reason appearing by the record why it was not done,
the filing of the affidavit and bond on the next day—
the twenty-fifth of October, 1893—was too late, and
conferred no jurisdiction on the Court of Criminal Cor-
rection, or on this court.   *State v. Epperson,* 4 Mo. 90;
*Cox v. State,* 9 Mo. 181;  *Thomas v. State,* 10 Mo. 235;
*State v. Anderson,* 84 Mo. 524;  *State v. Herman,* 20
Mo. App. 548;  *DeSoto v. Merciel,* 53 Mo. App. 57.
(2) The first objection to the ordinance, to wit, that it
is unnecessary, seems to me hardly deserving of ser-
ious contention.   The manifest purpose of the ordi-
nance was to prevent the doing of just such acts as
this defendant was guilty of, that is, putting up signs
that are combustible and easily ignitable, and which
would have a tendency to cause fire to spread to other
parts of the same building or to adjoining buildings,
and do damage to other people's property.   "It is an
established principle in this country that so long as the
legislature does not pass the limits fixed by the Consti-
tution, the courts have no authority to interfere on the
ground that the legislative acts in question violate the
natural principles of justice and right."   Tiedeman's
Limitations of Police Power, sec. 2;  *State v. Wheeler,*
25 Conn. 290;  *Wynehamer v. People,* 13 N. Y. 378;
*Doe v. Douglass,* 8 Blackf. (Ind.) 10;  *Stein v. Mobile,*
24 Ala. 614;  *Boston v. Cummins,* 16 Ga. 102;  *Hamilton
v. St. Louis Co. Ct.,* 15 Mo. 23.

*Jas. S. Laurie* for appellant in reply.

(1) Appeals from the police court are not governed by the provisions of the city charter and ordinances, but by the statute investing the St. Louis Court of Criminal Correction with jurisdiction of appeals from the police court of the city of St. Louis and providing the manner in which such appeals shall be taken (R. S. 1889, p. 2154, sec. 14; p. 2157, sec. 36). (2) Respondent's construction of the charter (art. 4, sec. 25) is not correct. Said section provides, as we have seen, that an appeal from the police court shall be taken "in like manner as provided by law for appeals from justices of the peace in criminal cases to their appellate courts." This clause, we submit, refers to the law governing appeals from justices of the peace in criminal cases as it existed at that time, at the date of the charter, 1876. Under such law as it existed at said date, said appeals from justices of the peace might have been taken within ten days (G. S. 1865, p. 727, sec. 15). (3) The term "immediately" as construed by the courts, is not limited to its literal signification. It does not signify instantly, or even on the same day, but means within a reasonable time. *Anderson v. Goff*, 72 Cal. 34; *Sorenson v. Swensen*, 55 Minn. 58; *Burchart v. Sasady*, 18 Iowa, 342; *Kentzler v. Ins. Co.*, 88 Wis. 598; *McFarland v. Ins. Co.*, 124 Mo. 204.

Gantt, P. J.—This is a prosecution by the city of St. Louis against defendant for violation of a city ordinance regulating the erection of signs on the top or street front of any building in said city.

The ordinance is as follows: Rev. Ord. 1887, section 721: "Any sign, of whatever material it may be constructed, now erected, or that hereafter may be erected, on the top or street front of any building that

may now be, or that may hereafter become rotten or unsafe, shall be taken down or removed; and any sign, that may hereafter be constructed on the top or street front of any building, which shall be over three feet in height, shall be constructed of sheet metal."

The complaint is as follows:

"State of Missouri, } ss.
"City of St. Louis. }

"ST. LOUIS, Mo., September 23, 1893.

"The R. J. Gunning Company, a corporation, to the city of St. Louis, Dr. to five hundred dollars for the violation of an ordinance of said city, entitled 'An Ordinance in revision of the ordinances of the city of St. Louis, and to establish new ordinances provisions for the government of said city,' being Ordinance No. 14000, Sections 721 and 726, approved April 12, 1887, in this, to wit: In the City of St. Louis, State of Missouri, on the 15th day of September, 1893, and on divers other days and times prior thereto, the said R. J. Gunning Company, a corporation, did then and there on premises at the northeast corner of Washington avenue and Broadway, erect and construct and cause to be erected and constructed certain signs on the street front of the building over three feet high, not constructed of sheet metal, contrary to the ordinance in such case made and provided. On information of G. B. Reid, Building Commissioner.

"JAS. G. BUTLER,
"City Attorney of the City of St. Louis."

A motion to quash the complaint was made in the St. Louis Court of Criminal Correction as follows:

*First*, said complaint is vague, indefinite and describes no offense. *Second*, the ordinance upon which said complaint purports to be based is void because: *First*, it is unwarranted by the charter; *second*, it is

unreasonable on the face of it; *third*, it is repugnant to fundamental rights.

The defendant was convicted before the police justice on October 24, 1893, and fined $100, and on the twenty-fifth day of October, 1893, filed its affidavit and appeal bond for an appeal to the St. Louis Court of Criminal Correction. In that court defendant moved to quash, but its motion was overruled, and upon a trial it was again convicted and fined $100. Motions for new trial and in arrest were duly filed and overruled, and it has appealed to this court, which has jurisdiction because the city of St. Louis is a party.

The evidence discloses that in September, 1893, there was a five-story business building on the northeast corner of Broadway and Washington avenue in St. Louis. The lower floor was occupied by the Parisian Cloak Company, and the remaining four upper floors were unoccupied. Some time in September the defendant company, whose business is advertising, took charge of the four upper floors, erected scaffolding and put up signs. These signs were made of muslin, which was nailed to scantling frames about four inches wide. These signs covered the windows of the upper floors. They were the length of the building, and in width twelve or fourteen feet. They were in several sections.

The manager of the Parisian Cloak Company complained, and the building commissioner inspected the signs and notified defendant it was violating the ordinance, and directed it to remove the signs. It declined to do so, and this prosecution was thereupon instituted.

I. Preliminary to an investigation of defendant's assignments of error must be determined the question raised by the city counselor that this court is without jurisdiction. The objection is based upon the fact that defendant was tried and convicted before the police

justice on October 24, 1893, and took no steps for an appeal until October 25; the contention of the city counselor being that the defendant was required to appeal "immediately," aud that he was required to file his affidavit for appeal on the day of his conviction, if he proposed to appeal. He relies upon section 25, of article 4, of the charter of St. Louis, which provides that: "The police justices, or any acting justices *pro tem.*, shall have jurisdiction over all cases arising under this charter, and of the violation of any ordinance, or of any provisions of this charter, subject to appeal, either by the city or defendant, to the St. Louis Court of Criminal Correction, in like manner as provided by law for appeals from justices of the peace in criminal cases to their appellate court."

Section 1117, of article 1, chapter 30, Revised Ordinance 1887, is an ordinance enacted in pursuance of the charter provisions as follows: "An appeal shall lie from the judgment of a police justice to the St. Louis Court of Criminal Correction in all cases in like manner as provided by law for appeals from justices of the peace in criminal cases."

The charter of St. Louis was adopted at an election held August 22, 1876, and became the organic law of that city on October 22, 1876. At the time this appeal was taken, the law governing appeals from justices of the peace in criminal cases permitted an appeal if the defendant "shall *immediately* after judgment is rendered file an affidavit stating he is aggrieved by the verdict and judgment in the case," etc.

At the time the charter was adopted an appeal could be taken within ten days. Gen. Stat., 1865, p. 727, sec. 15. Was it the intention of the framers of the scheme and charter that the law then governing appeals from justices of the peace in criminal cases

VOL. 138 mo—23

should remain unchanged as long as the charter should continue to be the organic law of the city, or was it their purpose to conform appeals from convictions for the violation of its ordinances to the general law of the State governing appeals in criminal cases as the same might be provided from time to time?

Upon consideration, we think the language of section 25, article 4, of the charter means that such appeals shall be taken in like manner as may be provided by law for appeals from justices of the peace in criminal cases to their appellate court, *at the time said appeal shall be taken.* The purpose of conforming to the State law is a marked feature of the charter, and we think was the intention in this case.

It is next insisted by counsel for defendant that the transcript is fairly susceptible of a reading showing an "immediate appeal." We construe the transcript from the police justice altogether, and it is evident that no application for an appeal was made until October 25, 1893. The words "thereupon comes defendant and files affidavit" can not be held to recite that "thereupon *on the same day, or immediately,* comes the defendant and files affidavit," in the face of the defendant's own affidavit which recites that "*on this twenty-fifth day of October, A. D., 1893,* personally appeared Daniel C. Beard and says this application is not made for delay," etc. On the contrary the most reasonable construction of the transcript when considered altogether is that the ¦police justice meant to say, and his record does say in legal effect, that "thereupon on October 25, 1893, comes the defendant and files his affidavit and bond," and this, moreover, is confirmed by the fact that both bond and affidavit were filed on October 25, 1893.

So that it now remains to consider the effect of the filing of the affidavit for appeal on the day suc-

ceeding the judgment of conviction, under a statute which requires it to be filed *immediately*.    In *State v. Epperson*, 4 Mo. 91, this court having held that an appeal must be taken *immediately*, further held that when judgment was rendered on February 23, 1835, and an appeal was prayed on February 24, 1835, it was too late and dismissed the appeal in this court. In *State v. Anderson*, 84 Mo. 524, it was ruled the affidavit must be filed immediately, but that the bond could be subsequently given.

It is a familiar principle in the law of this State that it is essential to the jurisdiction of an appellate court that an appeal to it has been taken within the time and in the mode prescribed by the law governing such appeal. Said Judge BLISS, in *Robinson v. Walker*, 45 Mo. 117: "A literal compliance with the statute in this respect is always held to be essential.    It is the only way in which the appellate court can acquire jurisdiction of the subject-matter of the former trial. It is *res adjudicata*, and if reopened it must be according to law, and the law is too plain to admit of construction."    It was further held that the appearance of both parties in the appellate court would not give jurisdiction in such a case, as the court had no jurisdiction of the subject-matter of that case.

It is urged by counsel for defendant that the words of the statute requiring the affidavit to be filed *immediately* after judgment, are sufficiently complied with by filing an affidavit the next day.    Of course *immediately*, in its strict signification, excludes the lapse of any interval of time.    The use of the word in various statutes has called for construction by the courts.    In the old special jury act, 24 Geo. 2 Ch. 18, the law required the party applying for special jury, to pay the costs "*unless* the judge shall immediately after

the trial certify in open court that the cause was a proper one to be tried by a special jury.''

In *Waggett v. Shaw*, 3 Camp. 316, on these words LORD ELLENBOROUGH held that an application for a certificate by the judge *the day after the trial was too late.*

In *Thompson v. Gibson*, 8 Mees & Welsby, 281, the court was called upon to construe the words *"immediately afterwards,"* found in 3 and 4 Victoria, chapter 24, section 2, which provides that unless the plaintiff in an action for trespass or trespass on the case, shall recover more than forty shillings, he shall not recover any costs unless the judge shall immediately afterward certify on the back of the record that the action was really brought to try a right besides the mere right to damages. In that case plaintiff recovered nominal damages only. The verdict was given at the close of the last day of the assizes and the court immediately adjourned to the judge's lodgings. No application was made in open court to the judge for the certificate for costs, but the plaintiff's counsel within a quarter of an hour after the verdict obtained the certificate from the judge. This was held sufficient. The court holding the words to mean "within such convenient time as is requisite for doing the thing.'' To the same effect, see *Richardson v. End*, 43 Wis. 316.

As a matter of judicial construction it can be said that the word *"immediately"* is much in subjection to its grammatical connection, and is of relative signification.

What effect should be ascribed to it in this statute in the light of its use in other statutes? We think no better definition has been given than that which ascribes to it the meaning "within such convenient time as is requisite for doing the thing.'' Now the supposed hardship of denying a defendant an appeal because his

bondsmen are not present is obviated by the statute, itself. All that is required to be done is the writing and filing the simple affidavit for appeal. Certainly a very short time only is required to do this, and the justice is required upon request to prepare it for the defendant.

Is it reasonable to wait till another day to do this? *Prima facie*, we think not. This places upon the appellant the burden of showing his appeal was prevented by good cause. Such a case was presented in *State v. Herman*, 20 Mo. App. 548. We think that case was correctly ruled, upon the *excuse* made therein for delay.

In *State v. Clevenger*, 20 Mo. App. 628, it was held the appeal was *prima facie* good if taken the next day after the conviction. In that case the St. Louis Court of Appeals did not refer to the decision of this court in *State v. Anderson*, 84 Mo. 524, though decided some two years previous to the decision in the *Clevenger* case. We think the decision in *Clevenger's* case is in conflict with the *Anderson* case, and the latter must control. Our conclusion is that in the absence of satisfactory reasons for delaying the affidavit for appeal it should appear that it was at least filed on the day of the conviction before the justice of the peace. Such a ruling entails no hardship and is in obedience to the direct command of the statute.

If extraordinary circumstances cause delay, the burden is on defendant to explain his delay. The action of the lower court is presumed to be correct until the appellant brings it before the appellate court for review *in the time prescribed by statute*. As defendant was bound to perfect its appeal according to the criminal statutes, and did not file its affidavit until the next day, we think it was too late, and the subsequent appearance, before the St. Louis Court of Criminal Correction conferred no jurisdiction of the subject-matter of

the action of that case, and its action thereon was null and void. Proceedings to render such judgment here as the St. Louis Court of Criminal Correction should have rendered, we dismiss the appeal and leave the judgment of the police justice in full force and effect. SHERWOOD and BURGESS, JJ., concur.