PEOPLE *v.* KRIESEL.

1. INTOXICATING LIQUORS—HOLIDAYS—OPEN SALOON—LABOR DAY
—CONSTRUCTION OF STATUTE.

Under 2 Comp Laws, § 5395, requiring saloons to be kept closed on legal holidays, Labor Day is a legal holiday, though made such after the enactment of the section; the statute applying not only to legal holidays existing at the time of its enactment, but to those thereafter created.

2. SAME—INTENT—ACTS OF EMPLOYÉ.

A saloonkeeper must, at his peril, keep his saloon closed on a legal holiday, and, in a prosecution against him for a violation of the statute, his intent is immaterial, and he is properly convicted, notwithstanding it is shown that the saloon was opened by his barkeeper, without his knowledge, and in disregard of his express instructions.

3. SAME—INSTRUCTIONS—ABSTRACT QUESTION—HARMLESS ERROR.

An instruction to the jury in such case that if the barkeeper went in simply to fasten the door, and did not drink or sell drinks, it was their duty to convict, is, whether correct or otherwise, an abstract question, and not reversible error, in the absence of evidence to justify the jury in finding the fact.

Exceptions before judgment from Cass; Carr, J. Submitted February 26, 1904. (Docket No. 114.) Decided March 15, 1904.

August Kriesel was convicted of keeping his saloon open on a legal holiday. Affirmed.

*Coy W. Hendryx,* for appellant.

*Charles A. Blair,* Attorney General, and *George M. Fields,* Prosecuting Attorney, for the people.

CARPENTER, J. The information in this case charged that respondent, "being a keeper of a saloon * * * where malt, spirituous, and intoxicating liquors are kept to be sold at retail, did, on the 7th day of September, A.

D. 1903, said 7th day of September, 1903, being a legal holiday, commonly called 'Labor Day,' keep the said place where said malt, spirituous, and intoxicating liquors are kept as aforesaid open, and did not keep the said place of business closed, as required by section 5395 of the Compiled Laws of 1897." The trial resulted in respondent's conviction. We are asked to set aside that conviction.

1. It is argued that Labor Day is not a holiday within the meaning of section 5395, because that section became law in 1887, while Labor Day did not become a legal holiday until 1893. Section 5395 required the saloon of respondent to "be closed  *  *  *  on all legal holidays." No argument is necessary to prove that the legislature intended this statute to apply not only to the holidays then existing, but to those thereafter to be created; and it is likewise apparent that when Labor Day was made a holiday, in 1893, the legislature intended that it should be one of the holidays mentioned in section 5395. Is there any objection to giving effect to this legislative intention? We quote from the opinion of Bovill, C. J., in *Queen* v. *Smith*, L. R. 1 Crown Cas. Res., at pages 270 and 271:

"The subject of extending statutes by inference to include cases not originally contemplated is one which has given rise to several decisions, the leading characteristic of which is that the earlier statute deals with a genus within which a new species is brought by a subsequent act. Thus, choses in action were not originally within 13 Eliz. chap. 5, against fraudulent conveyance, that statute being applicable only to property which could be taken in execution ( *Sims* v. *Thomas*, 12 Adol. & El. 536); but as to choses in action made subject to execution by 1 & 2 Vict. chap. 110, there can be no doubt that by the conjoint operation of that act and the 13 Eliz. chap. 5, such choses in action, having become, by new enactment, a species of the genus property subject to execution, did, without any express enactment to that effect in the later statute, become subject to the operation of the former act. *Norcutt* v. *Dodd*, Cr. & Phill. 100; *Barrack* v. *McCulloch*, 3 K. & J. 110."

Mr. Bishop, in his work on Statutory Crimes, § 128, says:

"Where the harmony of the law requires, one statute will be construed as lengthening out—that is, extending the effect of—another. Thus, when clergy was allowed, if a statute took it away from offenses of a designated class, all subsequently enacted offenses within such class were held to be excluded (1 East, P. C. 136; Foster, Crown Law, 190); the earlier statute, by construction, enlarging the later into the forbidding of clergy to the offender."

In *State* v. *Hays*, 78 Mo. 600, it was held that a statute providing for the punishment of public officers embezzling public funds was applicable to officials whose offices were created after the statute became law; the court saying:

"This statute was necessarily prospective in its operation. It applied by its terms to the then existing officers of the State, of whatever grade, so that they only came into official being 'by virtue of the constitution of this State, or any law thereof.' As a corollary to this, it would apply to any officer thereafter created, provided only that he be 'appointed or elected by virtue of the constitution or any law thereof.'"

In *State* v. *Kidd*, 74 Ind. 554, defendant was convicted of an unlawful sale of intoxicating liquor on the day of a municipal election. The information was based on an act passed in 1877 (Acts 1877, chap. 51) making it unlawful to sell liquor "upon the day of any State, county, township, primary, or municipal election." The act authorizing the municipal election in question was passed in 1879. Acts 1879, chap. 17. The conviction was affirmed, the court saying:

"It may be noted that the law authorizing the holding of such an election was not enacted until two years after the passage of the law under which the prosecution was instituted, and on this fact it may have been held that the law defining the offense should be construed to include only such election days as were then known to the law, and that the act providing for new elections could not enlarge the scope of a criminal statute theretofore enacted. This argument, if admitted, proves too much. The times for holding elections have been, and doubtless will be, frequently changed, but it has not been deemed necessary on

that account to change or re-enact the penal or criminal statutes which relate thereto. The general terms of these statutes are such as to preserve their force and applicability, notwithstanding the changes made in other laws. The language of the law under consideration is as general and comprehensive as it could well have been made, and may as well apply to elections since provided for as to those which were authorized by the laws existing at the time of its passage."

In *Nations* v. *State*, 64 Ark. 467 (43 S. W. 396), it was held that a statute punishing adultery between persons who are prohibited from marrying extended to first cousins, though they were prohibited from marrying by a law passed after the statute which defined and created the crime.

Our attention is called by respondent to many cases which hold that a particular law does not extend to a thing not in being at the time of its passage, nor to things created and defined by subsequent statutes. Nearly all these cases are so unlike the case under consideration that they need no discussion whatever. To illustrate this, we refer to one of those cases,—*Queen* v. *Smith*, L. R. 1 Crown Cas. Res. 266. There respondent was indicted under a statute making it a felony to "receive any chattel  *  *  *  the stealing or taking  *  *  *  whereof shall amount to a felony either at common law or by virtue of this act, knowing the same to have been feloniously stolen or taken." The offense charged against respondent was not a felony either at common law or by virtue of that act, but became such by a subsequent act. It was held that the conviction could not be sustained; the court saying, however:

"If 24 & 25 Vict. chap. 96, § 91 [the law creating the offense in question], is to be read as a general enactment that for the future any person receiving goods stolen, with a guilty knowledge that they were stolen, should be liable to be indicted for felony as a receiver, the subsequent statute having introduced a new species of larceny, it might have been contended that the general provision as

to receiving, in the former statute, was by inference extended to the new species of larceny."

The only authority cited by respondent which we think needs distinguishing from those heretofore referred to is a reference made in the opinion in *Queen* v. *Smith, supra,* to Foster's Crown Law, pp. 372, 373, where it said:

" In the case of horse stealing, it is true, the statute of Elizabeth hath taken away clergy as well from the accessary after as before the fact; but it must be observed that this statute extendeth only to such persons as were, in judgment of law, accessaries at the time the act was made, namely, accessaries at common law,—not to such as are made accessaries by subsequent statutes. And therefore a person knowingly receiving a stolen horse, who is made an accessary by some late statute, is not ousted. This was agreed by all the judges at a conference in Easter term in the second of Queen Anne,"—citing a manuscript opinion in *Tracy* v. *Denton.*

Of course, we have not access to the opinion referred to, but it is apparent from this statement of it that the opinion proceeded upon the assumption, as stated in the above quotation, that " the statute extendeth only to such persons as were, in judgment of law, accessaries at the time the act was made." This proves that that decision has no application to this case and to the decisions above cited, for this statute was clearly intended to extend to the holidays subsequently created, as well as to those existing at the time the statute was passed. We conclude, therefore, that Labor Day is a legal holiday within the meaning of section 5395.

2. The evidence of respondent tended to prove that he personally was not responsible for his saloon being open on Labor Day. He had instructed his barkeeper not to open it, but his barkeeper, disregarding those instructions, did open it about 4 p. m. on Labor Day. It is contended that, inasmuch as respondent was not personally responsible for his saloon being open, and being himself innocent of any guilty intent, the conviction cannot be sustained. We think *People* v. *Roby,* 52 Mich. 577 (18 N. W. 365,

50 Am. Rep. 270), *People* v. *Blake*, 52 Mich. 566 (18 N. W. 360), and *People* v. *Talbot*, 120 Mich. 486 (79 N. W. 688), fully answer this contention.

3. At the conclusion of the charge of the court, one of the jurors asked the court, if the barkeeper went in simply to fasten the door, and did not drink or sell drink, whether it would be their duty to convict. The court answered "Yes." To this, error is assigned, and we are asked to reverse the case on the ground that this was an improper direction. There was no testimony in the case, as shown by the record before us, which we must presume to be correct, justifying the jury in finding that the barkeeper went in there to fasten the door. This was a mere abstract question, and, if incorrectly answered,—which we do not determine,—would not justify a reversal.

The conviction will be affirmed.

The other Justices concurred.