[No. 18104.  Department One.  July 30, 1923.]

THOMAS CORKERY, *Plaintiff*, v. J. GRANT HINKLE, *as Secretary of State, Defendant.*[1]

ELECTIONS (4)—POWER TO REGULATE—ABSENT VOTERS ACT.  The constitutionality of the law authorizing absent voting is not in question in a primary election to nominate candidates for office, as a constitutional "election" does not include such a primary.

SAME (4, 13)—QUALIFICATIONS OF ELECTORS—ABSENT VOTERS ACT —CONSTITUTIONAL AND STATUTORY PROVISIONS.  The absent voters act, not enlarging or diminishing the qualifications of voters, is valid as regulating the procedure of voting, so far at least as primary or nominating elections are concerned.

STATUTES (70) — CONSTRUCTION—SPECIAL ACTS — INCORPORATING PROVISIONS OF GENERAL ACT.  Where a special act incorporates all general laws on the same subject not inconsistent therewith, general laws subsequently passed not inconsistent therewith become incorporated in the special act.

ELECTIONS (25)—STATUTES (70)—NOMINATIONS AND PRIMARY ELECTIONS—TO FILL VACANCY—GENERAL AND SPECIAL ACTS.  The act of 1909, Rem. Comp. Stat., § 3799 *et seq.*, relating to the filling of vacancies of representatives in Congress, is a special act which, by its terms (Id., § 3802), incorporates as a part thereof all general laws not inconsistent therewith; hence the later act of 1915 (Id., § 5280), relating to absent voting at primaries for the nomination of candidates for office at all general elections, applies to special elections to fill vacancies of representatives in Congress; there being no inconsistency between absent voting at special and general elections.

Application filed in the supreme court July 3, 1923, for a writ of mandamus to compel the secretary of state to certify the election of plaintiff as a candidate to fill a vacancy in the office of representative in congress.  Denied.

*Turner, Nuzum & Nuzum, Powell & Herman, Robert Corkery,* and *R. B. Harris,* for plaintiff.

[1] Reported in 217 Pac. 47.

MACKINTOSH, J.—A vacancy having been occasioned by the resignation of the member of Congress for the fifth congressional district of this state, pursuant to statutory requirements, a special primary election was held for the purpose of nominating persons to be subsequently voted for at a special election to fill such vacancy. The question before us arises as to whether certain votes cast at this primary under the so-called absent voters act are to be counted.

It is to be regretted that the need for a speedy decision of this question makes it impossible in the limited time at our disposal to present as orderly and finished an opinion as this important and interesting question merits.

The following statutory provisions are pertinent to this inquiry:

"That whenever any vacancy exists in the office of United States senator or representative in congress from this state, or representatives in congress from any congressional district of this state by death, resignation, disability or failure to qualify, of persons elected to such office, and there shall be a necessity for the filling of such vacancy, or threatened vacancy, for the term or the remainder of the unexpired term, the governor shall issue a writ of election to fill such vacancy, which writ shall fix the time for such election not less than twenty-five days after the issuance thereof, and such writ shall also fix a day not less than fifteen days after the issuance of the writ, and not less than ten days before the special election called therein, for the holding of a special primary for the purpose of nominating candidates, to be voted for at such special election." Rem. Comp. Stat., § 3799 [P. C. § 1458] (Passed 1909).

"The general election laws and the laws relating to primary elections shall apply to the special elections herein provided for, in so far as the same are not inconsistent with this act and shall be construed with and

made a part of this act for the purpose of carrying out the spirit and intent thereof." Rem. Comp. Stat., § 3802 [P. C. § 1461] (Passed 1909).

"Any elector of the state who believes that he will be unavoidably absent from his home, and more than twenty-five miles distant from the precinct in which he is qualified to vote, may vote at general elections to be held for federal, United States senatorial and congressional, state or legislative officers, or propositions, or at any primary held for the purpose of nomination for any such election, in the manner provided for in this act." Rem. Comp. Stat., § 5280 [P. C. § 2087] (Originally passed in 1915).

The plaintiff has made an elaborate presentation in his briefs and in his oral argument of the question whether the act of 1915, providing for the voting of absent electors, is constitutional under the provisions of art. 6, § 1, of the constitution. But this becomes entirely immaterial to the question before us if we do but remember that this court, in *State ex rel. Zent v. Nichols,* 50 Wash. 508, 97 Pac. 728, has already decided that the constitutional definition of the qualifications of voters has no reference to primary elections held for the nomination of candidates for office; that the constitutional "elections" do not include "primary elections;" and that the situation before us involves only the absent voters act as referring to a "primary election." We therefore may dismiss all those cases arising at the time of the civil war which hold that absent voters acts were unconstitutional, and at the same time those later cases which have held that similar modern laws which now exist in 43 of the 48 states of the Union are constitutional, and leave undecided that question until it is presented in a case involving the constitutionality of this act as it relates to "elections" as we have defined them as not including primaries.

We come now directly to the question before us, which is whether the provisions of § 3802, *supra,* which provides that all general election laws and laws relating to primary elections shall apply to special elections and shall be considered and made a part of the special election and primary law, have thus incorporated with them the provisions of § 5280 *et seq.* relating to absent voting. On this question, which, as we have already said, is the only one in the case before us, we have not had the benefit of the citation of any authorities or any discussion in the briefs or oral arguments of either party. We have, therefore, been compelled in the extremely short time allowed for the determination of this case, to make an independent investigation, which compels the conclusion that the act of 1915, by reference, has been made a part of the act of 1909, and that absent voting is legal in a primary held for the purpose of making nominations to be voted on at a special election. This conclusion appeals as being logical and is supported by such authorities as our research has revealed, there being apparently nothing to the contrary.

Before passing to the consideration of those authorities it is well to state certain fundamental principles relating to the subject generally. It has been held by this court in at least four cases that statutes such as the absent voters act may be passed as statutes regulating the procedure of voting. This was held in *State ex rel. Shepard v. Superior Court,* 60 Wash. 370, 111 Pac. 233, 140 Am. St. 925; *State ex rel. Rogers v. Howell,* 92 Wash. 381, 159 Pac. 118; *State ex rel. Mullen v. Howell,* 108 Wash. 340, 184 Pac. 333, which involved the question of registration, and in *State ex rel. Carroll v. Superior Court,* 113 Wash. 54, 193 Pac. 226, involving a similar question. The absent voters act, taking

it as valid in so far as it relates to primaries, as a matter of fact, does not attempt to either enlarge or diminish the qualifications set out in the constitution for electors, and is, in fact, an act modifying or adding to acts theretofore in existence relating to the process and means by which the electors' will is to be ascertained, and it is analogous to those statutes which relate to the casting and receiving of the ballots of electors who through physical or mental disability are unable to comply with the demand of the ordinary regulations covering other qualified electors differently situated. In other words, the act of 1915, by its terms, attempts to create no new class of voters nor to add any new qualifications. It deals with persons possessed of the qualifications set out in the constitution who have the right to vote and says that certain of them occupying a certain status may have their ballots received in a certain manner, exactly as other statutes say that certain others in different situations—i. e., the blind, the feeble, those using voting machines, those whose votes have been challenged etc.—may have their ballots received in manners differing from the ordinary methods. *Straughan v. Meyers,* 268 Mo. 580, 187 S. W. 1159.

What we have just said does not determine the question raised by the attack upon the constitutionality of the absent voters act only as applied to constitutional "elections," because that attack, directed upon the hypothesis that "elections" and "primaries" are the same things, is that the act is unconstitutional for the reason that it permits voting at a place other than that described in the constitution as being the one "at which they offer to vote."

There can be no question that the act of 1909, which was enacted under the title: "An Act providing for

the filling of vacancies of the representatives in Congress,'' is a special act referring to and limiting a specified subject, and that it is therefore an act similar in nature to those special acts which we shall see have been under consideration by the courts.

With the ground thus cleared of encumbrances, we proceed to the assertion, which is supported by the authorities, that, where a special act by its terms incorporates all general laws not inconsistent therewith, by reference, such general laws relating to the matter passed subsequently to the special act, either as new enactment or amendment to prior existing laws, and not inconsistent with the special act, become incorporated in the special act.

Sutherland, Statutory Construction (2d ed.) vol. II, § 405:

''Where one statute adopts the particular provisions of another by a specific and descriptive reference to the statute or provisions adopted, the effect is the same as though the statute or provisions adopted had been incorporated bodily into the adopting statute.'' and, continuing;—

''There is another form of adoption wherein the reference is, not to any particular statute or part of a statute, but to the law generally which governs a particular subject. The reference in such case means the law as it exists from time to time or at the time the exigency arises to which the law is to be applied. The supreme court of Illinois says: . 'Where, however, the adopting statute makes no reference to any particular act by its title or otherwise, but refers to the general law regulating the subject in hand, the reference will be regarded as including, not only the law in force at the date of the adopting act, but also the law in force when action is taken, or proceedings are resorted to.' ''

Endlich on the Interpretation of Statutes, § 483:

''But, when the incorporating act does not in terms declare that the mode of procedure prescribed by an-

other act, not specifically referred to, but being then the only one established by law and incorporated by the general reference 'the same as' in the case provided by the earlier act, it is said to be intended 'as a rule for future conduct,' a rule 'always to be found, when it is needed by reference to the law . . . . existing at the time when the rule is invoked.' "

See, also, Sedgwick on Constitutions and Statutes (2d ed.), page 229; Beal on Cardinal Rules of Legal Interpretation (2d ed.), page 377, to the same effect.

The supreme court of Pennsylvania, in *Kugler's Appeal* 55 Pa. St. 123, was considering an election held for the purpose of dividing a township. An act passed in 1854 provided that townships might be divided, and "the proceedings had in the case of such division or alteration shall be the same as in the erection or alteration of the lines of townships." At that time the only method of erection or alteration of the lines of townships was that found in the act of 1834, and, as the court said, "this was doubtless the method which the legislature had in view when the act of 1854 was passed that prescribed a mode by reference to the existing method providing for another subject." In 1857 an act was passed which changed the proceeding in the erection and alteration of township lines, and "this was a new provision which could not have been contemplated when the act of 1854 was passed." An election was called in 1866 under the 1854 law, and the question arose as to whether the election should be conducted as provided in the law of 1834 or 1857. Here we find a case where the prior special law, by express terms, would seem to exclude its application to the subsequent general law, and yet the later law was held to be incorporated into the earlier by reference. In this case the court said:

''The act of 1854 does not in terms declare that mode shall be the one existing at the time of its enactment. It was intended as a rule for future conduct, a rule, we think, always to be found when it is needed by reference to the law in regard to township division existing at the time when the rule is invoked.

''There are to be found among our Acts of Assembly many analogous cases of enactment by reference to other acts. A very common one is where an appeal from an inquisition or a report of viewers is allowed 'as in other cases' or 'as appeals are taken from awards of arbitrators'. It has never been doubted that such an appeal must be made in the manner prescribed by law for other cases, at the time when it is proposed to make it. In the absence, then, of any words in the proviso to the Act of April 20, 1854, showing an intent to limit the proceedings spoken of to those which were in force in regard to the erection or alteration of township lines, at that time, we think it must be held that the rule of procedure is to be found in the law as it is when an election district is sought to be divided.''

The supreme court of Florida, in *Jones v. Dexter*, 8 Fla. 276, was considering an act passed in 1828 prescribing the manner in which personal property should be distributed, that act providing ''that . . . the property . . . shall be distributed according to the provisions of the law regulating descents.'' In 1822 an act had been passed regulating descents, and in 1829 a new act was passed for the same purpose and providing for an entirely new line of distribution. The court held that the act of 1828, which adopted the provisions of the law regulating descents as furnishing a rule for the distribution of personal estate, was intended to refer to any law of descent which might be in *force at the time when the right to the distribution might become vested.* This opinion presents an elaborate and learned discussion of the subject, but is too long for recapitulation here.

In *McKnight v. Crinnion*, 22 Mo. 559, there was involved a statute of 1849 regulating the jurisdiction of justices of the peace in actions for the recovery of personal property and providing that such actions "should be conducted after the rules governing such actions in the circuit court." A prior act of 1845 dealt with proceedings in the case of replevin, and it was contended that this was the procedure which must be followed under the act of 1849, rather than the process provided in an act passed subsequently to the act of 1849 relating to such proceedings and which stated that it should not apply to proceedings or actions before justices of the peace. The court said:

"In declaring that justices should conform to the rules governing actions of replevin in the circuit courts, the legislature obviously intended the rules for the time being. That whatever rules prevailed in the circuit court, at the time of beginning the proceedings in the justices' courts, those rules should control the justices. It was not designed that the rule in the justices' courts should be different from that in the circuit court, but that as often as the rule was changed for the circuit courts, the justices should be governed by it."

The same court in *Gaston v. Lamkin*, 115 Mo. 20, 21 S. W. 1100, had before it an election held for the purpose of incurring certain indebtedness and levying certain taxes. The act in regard to such election, passed in 1879, provided that the election should be conducted as were "elections for state and county officers in so far as the laws in relation thereto are applicable." The act in regard to the election of state and county officers provided for certain notices, kinds of ballots and methods of voting. In 1891, the Australian ballot system was adopted by statute and changes were made in the time of notices, etc., and the supreme court held

that the election under the act of 1879 must be conducted in conformity with the act of 1891, saying:

"And the respondents contend that the election was properly held under the general election law as it read at the time this statute was passed. The general rule governing in such case seems to be that, where one statute refers to another for rules of procedure prescribed by the former, the former statute, if specifically referred to, becomes a part of the referring statute, and the rules of procedure prescribed by the earlier statute, so far as they form a part of the second enactment, continue in force, although the earlier statute be afterwards modified or repealed. But when the subsequent statute, being a general one, does not refer specifically to a former statute for the rule of procedure to be followed, but generally to the established law, by some such expression as 'the same as is provided for by law' in given cases, then the act becomes a rule for future conduct, to be found when needed by reference to the law governing such cases at the time when the rule is invoked. . . . The cases cited by respondents as militating against this rule will be found on examination not to be within in. . . . And there can be no doubt that in all such cases the intention of the legislature was that the election should be held in conformity with the provisions of the general election law as it stands at the time the election provided for is held. It cannot be that the legislature intended that, in each of the several elections thus provided for, the election law as it may have stood at the time of the adoption of each is to be the rule of conduct for such election. Such a construction would be intolerable, and destructive of that simplicity and uniformity in the conduct of elections which is so essential to the intelligent expression of the public will. The legislative will in regard to such elections as the one in hand is manifested by the provisions of the general election law as it stood at the time of the election, . . ."

The same court, in *City of St. Louis v. Gunning Co.*, 138 Mo. 347, 39 S. W. 788, interpreted a provision of the

St. Louis charter providing that appeals from the police justice should be taken in "like manner as provided by law in appeals from justices of the peace." This charter provision was enacted in 1876, and at the time the general statute of 1865 was in effect. Subsequently to 1887, an amendment was made altering the method of taking appeals generally, and the court held that the charter provision incorporated by reference the new enactment, saying:

"Was it the intention of the framers of the scheme and charter that the law then governing appeals from justices of the peace in criminal cases should remain unchanged as long as the charter should continue to be the organic law of the city, or was it their purpose to conform appeals from convictions for the violation of its ordinances to the general law of the state governing appeals in criminal cases as the same might be provided from time to time? Upon consideration, we think the language of section 25, art. 4, of the charter means that such appeals shall be taken in like manner as may be provided by law for appeals from justices of the peace in criminal cases to their appellate court, at the time said appeal shall be taken."

There was presented to the supreme court of Illinois, in *Culver v. People ex rel. Kochersperger,* 161 Ill. 89, 43 N. E. 812, an act of 1873 in regard to special assessments for the improvement of parks and boulevards which provided that the proceedings should as near as might be conform to the provisions of the act of 1872. A subsequent amendment altered the method of making these assessments, and the court said:

"Where, however, the adopting statute makes no reference to any particular act, by its title or otherwise, but refers to the general law regulating the subject in hand, the reference will be regarded as including, not only the law in force at the date of the adopting act,

but also the law in force when action is taken or proceedings are resorted to.''

See, also, *Harris v. White,* 81 N. Y. 532; *Mayor of Troy v. Mutual Bank,* 20 N. Y. 388; *State v. Cleveland,* 83 Ohio St. 61, 93 N. E. 467; *People v. Kriesel,* 136 Mich. 80, 98 N. W. 850; Bishop on Statutory Crimes, § 128 (3d ed.), p. 137, says:

''. . . where the harmony of the law requires, one statute will be construed as lengthening out—that is, extending the effect of—another. Thus—When clergy was allowed, if a statute took it away from offenses of a designated class, all subsequently-enacted offenses within such class were held to be excluded [1 East P. C. 136; Foster 190]; the earlier statute by construction enlarging the latter into the forbidding of clergy to the offender.''

Passing now from these opinions of other courts, we find that the supreme court of this state has had this question before it in at least nine cases and has announced a rule considerably broader than the rule stated in the authorities already noticed, for this court has held, as will be noted later, that even where a special act refers to a general act already in existence and incorporates it as part of the special act, that a subsequent general enactment becomes by reference a part of the special act, though the prior general act is thereby repealed.

The question first arose in the case of *Luzader v. Sargeant,* 4 Wash. 299, 30 Pac. 132, involving a school election which, under the law of 1889, prescribed that the election should be held in the manner provided by law for holding special elections. In 1890 the law relating to special elections was passed, providing that they should be held in the same manner as general elections. This action was begun to have the election de-

clared invalid for the reason that it was held in accordance with the laws of 1890. The court said:

"We do not attach the importance, urged by the appellant, to the bonding act of 1890 in the matter of calling these elections. Had that law prescribed that bond elections should be called 'in the manner provided for calling special school elections by the act of 1886,' the case would have been different. That would have been an incorporation of the act of 1886 into the new act; but the language used merely shows that the law of the subject is to control, as it may be changed from time to time."

The facts in this case bear a remarkable similarity to the facts in the case at bar. It appears to be one of those cases which are so diligently searched for and so seldom found. In the case at bar, it is claimed that eleven illegal votes were counted; in the *Luzader* case it is claimed that "more than ten illegal votes were counted." In the case at bar, it is claimed that, if the illegal votes were disregarded, the plaintiff would have been nominated by four votes; in the *Luzader* case, *supra*, it was claimed that, if the illegal votes were disregarded, the bond issue would have been defeated by three votes; in the case at bar, it is the contention that a subsequently passed general act providing for the receiving of absent voters' ballots was not incorporated in a prior special act; in the *Luzader* case it was claimed that a subsequent general statute relating to school elections, providing for the receiving of the votes of females was not included in a prior special act. Thus, as we have said, the two cases present a striking similarity. The dissimilarity consists in facts which make the decision in the *Luzader* case more debatable for the inclusion of the subsequent general legislation as a part of the prior special legislation than do the facts in the case at bar, for in the *Luzader* case the

subsequent general act created an entirely new class of voters who were not qualified to vote at all at the time of the passage of the special act, whereas, in the case at bar, the act of 1915 creates no new class of voters; but merely provides a new method for the reception of votes of persons already qualified at the time of the passage of the act of 1909. The contention that the votes of women were illegally cast in the election, considered in the *Luzader* case, *supra,* was disposed of by the court saying: "The women were entitled to vote. (Acts of 1890)." It would seem that there could be no authority more binding upon us here than the decision in the *Luzader* case, *supra.*

In *Newman v. North Yakima,* 7 Wash. 220, 34 Pac. 921, we were considering a special act passed by the territorial legislature incorporating the city of North Yakima (1885) and providing that the taxes should be levied and collected in accordance with the provisions of the *existing* general law on the subject. Thereafter the general law relating to this matter was radically changed and the court held that:

"By this act of incorporation it was provided only that certain things in connection with the levy and collection of taxes should be done in accordance with the provisions of the existing law, and in some places the term used was that the act should be done in accordance with the provisions of the law now in force, or words to that effect. But in none of the references thus made was there any special act, section or provision of the general law set out or indicated. And taking all of such references and construing them together we feel compelled to hold that the legislature thereby intended simply to provide that such acts should be done in accordance with the provisions of the general law in force at the time of the doing thereof. In fact, if we take into consideration all of the expressions bearing upon the subject, it seems to us that such an intention on the part of the legislature

sufficiently appears. And when we further take into consideration the fact that one of the main objects of providing that these acts should be done in accordance with the provisions of the general law, excepting so far as modified by the express provisions of the act of incorporation, was, so far as possible, to procure a uniform system applicable to all of the cities thus specially incorporated, such intention becomes so manifest that there is no escape therefrom. Any other construction would destroy such uniformity as between the different cities of the state without any reason whatever. If the provisions of any general law could properly be made applicable to one city they could probably as well be made applicable to all cities similarly situated, and if the general law in force at the time of the passage of the special act was of such a nature that the acts of the city could properly be governed thereby, it would follow almost as a matter of course that another general act upon the same subject matter and relating to the performance of the same duties could as well be made applicable thereto. In our opinion, then, the references contained in the act of incorporation of said appellant must be taken to be to the general law in force at the time the tax was levied instead of to that in force at the time of incorporation.''

This case has attracted the attention of the authors and text writers discussing this subject and has been cited by them as probably the leading case in this country on the question before us. It is the case to which we have already referred as extending the doctrine somewhat beyond that established by the cases which we have cited from other jurisdictions.

*Ford v. Durie*, 8 Wash. 87, 35 Pac. 595, 1082, discloses that it was provided in the charter of the city of Seattle that deeds for property sold for delinquent taxes should be issued ''as prescribed in the laws of the state of Washington relating to property sold for state and county taxes.'' At the time the charter went into

effect, the act of 1891 prescribed the method of sale for state and county taxes. In 1893 a new act was passed on this subject changing the law of 1891. The court said:

"But a single question is presented by the record in this case: Was the law in relation to the execution of deeds for lands sold for state and county taxes in force at the date of the adoption of the charter of the city of Seattle so made a part thereof by the provisions of § 34 of art. 9 of said charter that a subsequent change in the law relating to such sales would have no effect upon the law repealed by such subsequent legislation so far as it related to the provisions of said charter?"

The court held that no specific provisions of the statute in force at the time was so made a part of the charter as that subsequent general legislation would not be incorporated into the charter by reference, saying:

"The force of such language as well authorizes the contention of the appellant that it refers to the law in force at the time of the making of the deed, as that of respondent that it refers to that in force at the time of the adoption of the charter, and the intent of the framers of the charter, as manifested by other provisions, makes it necessary that we should hold with the appellant that they intended by such language to refer to the law in force at the time when the deed was to be executed."

See, also, *School District No. 43 v. Fairchild,* 10 Wash. 198, 38 Pac. 1029.

In *State ex rel. Smith v. Parker,* 12 Wash. 685, 42 Pac. 113, there was a special act on the subject of forcible entry and detainer which provided that the summons must be issued generally as in other cases, and the court held that this did not incorporate irrevocably as a part of such special act the provisions of the

general law referring to the services of summons in force at the date of the special act, but must be construed as a law referring to the future and incorporating in the special act such subsequent general laws as were in force at the time of the issuance of the summons.

In *Security Savings & Trust Co. v. Hackett,* 27 Wash. 247, 67 Pac. 607, an act was considered which referred to the law "as in other cases," and it was held that this should be construed as having reference to a subsequently passed act in force at the time the suit was begun, instead of that "in force at the time the act was passed."

In *Orrock v. South Moran Township,* 97 Wash. 144, 165 Pac. 1096, Judge Fullerton, in discussing a question closely analogous to the one here, said:

"It is a well settled rule 'that a statute may include by inference a case not originally contemplated, when it deals with a genus within which a new species is brought by a subsequent statute.' "

See, also, *Chelan County v. Navarre,* 38 Wash. 684, 80 Pac. 845; *State ex rel. Hindley v. Superior Court,* 70 Wash. 352, 126 Pac. 920.

Under these authorities, the result seems inevitable that the act of 1909 incorporates by reference the provisions of the act of 1915 in regard to the vote of absentees at primary elections.

The legislatures which passed the act of 1915 and the subsequent amendments are charged with knowledge of the act of 1909, and also with the interpretations which had been given by this court to similar provisions in other acts. 36 Cyc. 1146; *Ensley v. State ex rel. Brown,* 198 Ind. 198, 88 N. E. 62; *State v. Bowers,* 5 Atl. (N. J.) 178; *Sikes v. St. Louis & S. F. R. Co.,* 127 Mo. App. 326, 105 S. W. 700. There is no inconsistency between

the casting of votes by absentees at special and general primaries. The same wise progressive purpose actuates the provisions for such voting in both instances. There is no difference between special and general primaries except the difference in the times at which they are held. The time for general primaries is fixed by statute for a definite date; the time for special primaries the law provides shall be fixed as the occasion for a special election demands a special primary. As we have said, this is the only difference between the two primaries, and there is nothing inconsistent or inharmonious in providing that persons similarly situated shall exercise their rights of franchise in the same manner on both occasions, so that the will of the majority of those qualified to vote may receive full expression; in fact, to differentiate between the two occasions would be to enact legislation which is inharmonious, inconsistent and against enlightened public policy manifested in the recent adoption of such legislation in practically all states. The purpose to accomplish the latter result must clearly appear, and we find no such purpose in the record. As Judge Holcomb said, in the case of *White v. North Yakima,* 87 Wash. 191, 151 Pac. 645:

"All laws upon a given subject should be construed together so as to produce a harmonious system if possible; the presumption being that a new law relating to such subject was enacted with reference to the former laws.

"In the light of these principles, an examination of these acts reveals nothing repugnant in the later act with the provisions of the former. It seems clear that chapter 51, Laws 1913, is supplementary to chapter 98, Laws 1911. The provisions of the later act might be read into chapter 98, Laws 1911, as additional sections relating to improvement of streets by cities and towns

and there would be no important contradictions or inconsistencies.''

For the reasons stated, the plaintiff's action is dismissed.

MAIN, C. J., BRIDGES, HOLCOMB, and MITCHELL, JJ., concur.