DETERMINED IN THE

# SUPREME COURT

OF

# WASHINGTON

[No. 7381. Decided July 7, 1908.]

## THE STATE OF WASHINGTON, *Respondent*, v. GEORGE K. GILLULY, *Appellant*.[1]

WITNESSES—CREDIBILITY—EVIDENCE OF ANIMOSITY. In a prosecution for forgery of an order for witness fees, it is proper to exclude cross-examination of state's witness to show her animosity to the accused by evidence that she was a friend of a party unsuccessfully defended by the accused.

APPEAL—REVIEW—HARMLESS ERROR. It is not error to exclude the answer to a question that has already been answered.

CRIMINAL LAW—VENUE—EVIDENCE. The venue of a forgery is sufficiently established, although no witness testified directly that the crime was committed at a designated place, where there were many inferences from the testimony and a great deal of direct proof that it was committed in a certain county.

CRIMINAL LAW—APPEAL—REVIEW—VERDICT. A verdict in a criminal case cannot be set aside because of the vague, inconsistent and contradictory statements of the principal witness for the state, where there was sufficient evidence, if uncontradicted or if believed by the jury, to sustain it.

CRIMINAL LAW—SENTENCE—CHANGE OF LAW. Where the crime of forgery was committed on April 11, 1907, the accused cannot be sentenced under the law approved March 13, 1907, p. 341, which went into effect June 11, 1907; since § 8 provides that a person found guilty of a crime committed prior to the taking effect of the law shall be sentenced under the law in force at the time of the offense.

SAME—APPEAL—DECISION—SENTENCE—REMAND. Upon reversing a criminal conviction because of an improper sentence, the case will be remanded for the imposition of a proper one.

[1]Reported in 96 Pac. 512.

Appeal from a judgment of the superior court for Spo-
kane county, Huneke, J., entered September 23, 1907, upon
a trial and conviction of the crime of forgery. Reversed.

*Harris Baldwin*, for appellant.

*R. M. Barnhart, George A. Lee*, and *J. Stanley Webster*,
for respondent.

DUNBAR, J.—The defendant was convicted of the crime of
forgery. The information charged that he unlawfully,
feloniously, etc., forged and counterfeited a certain instru-
ment, set forth as follows:

"April 11th, 1907.
"To the Auditor of Spokane County, Washington: Please
give to George K. Gilluly fees due me in the case of State v.
Theo. Barlough.          Florence Gray."

To this information the defendant pleaded not guilty, and
upon a verdict of guilty by the jury, was sentenced to the
penitentiary under the indeterminate sentence law. The de-
fendant presented this order to the auditor, and obtained the
fees due Florence Gray to the amount of $2.20. His con-
tention was that he was authorized by Florence Gray to
write this order and sign her name to it.

The appellant assigns as error, (1) that the court erred
in sustaining the objections of the respondent to testimony
which the appellant sought to elicit from the witness Florence
Gray on her cross-examination, which would, if admitted,
have tended to show animus by her against the appellant;
(2) the court erred in sustaining the objections of the re-
spondent to testimony which the appellant sought to elicit
from the witness Sadie E. Simpson, which would have, if ad-
mitted, tended to show that Florence Gray did authorize the
appellant to receive from the county auditor the witness fee
specified in the information; (3) that there was no evidence
that the crime alleged was committed in Spokane county, and
no proof of jurisdiction; (4) that the verdict is against the

evidence; (5) that the court erred in denying appellant's motion for a new trial; (6) that the judgment of the court was under a statute which is *ex post facto* as to appellant.

The first assignment is so vague and indefinite that it is with the utmost difficulty that the court can determine what particular testimony is referred to; but we gather that the testimony which was excluded, and upon the exclusion of which error was based, was an attempt to show on cross-examination that the witness Florence Gray was on intimate terms of friendship with one Mr. Barlough, the appellant having defended Barlough for the crime of rape, and this being the case in which the witness fee which is the subject of the information in this case was earned by the prosecuting witness Florence Gray, and the contention of the appellant being that, inasmuch as the appellant failed to successfully defend the said Barlough, said Barlough being a particular friend of the witness Florence Gray, she would be prejudiced against the appellant who acted as an attorney in the defense of Barlough. The court said in passing upon that question: "I don't see how the relationship of friendship with Mr. Barlough would have any bearing upon this case unless you show some reason for it. There is no sufficient reason shown here to justify the presumption of animosity." We think the court was justified in excluding all such testimony as this. Its introduction would have no effect but to cloud the real issues in the case.

As to the second assignment, that the court erred when it excluded the testimony of Sadie E. Simpson, which would have tended to show that Florence Gray authorized the appellant to collect the witness fee of $2.20 referred to in the information, it is stated in the appellant's brief that the court excluded this testimony upon the theory that no foundation had been laid to impeach the testimony of Florence Gray by the testimony of Sadie E. Simpson; but an examination of the record shows that this contention is with-

out foundation. It must be conceded that the foundation was fully laid, but the witness did testify that on one occasion she heard the witness Mrs. Gray conversing over the telephone with the appellant, and that she did ask him to collect her witness fees for her in the Barlough case, and after a good deal of questioning backwards and forwards the court stated that the witness could answer as to any instance in addition to those she had already referred to. But again, immediately after this, in response to the question: "Did you ever or not hear Mrs. Gray request Mr. Gilluly, over the telephone or otherwise, to collect her witness fees for her?" she answered: "No, only that time;" and the court stated that that answered the question. When it was asked again, in practically the same form, the court did not rule it out on the ground that no proper foundation had been laid, but on the ground that it was substantially the same question that had been asked before. This assignment also is obscure and indefinite, and the court has met with the same difficulty in determining just what testimony is referred to as a basis for the assignment of error.

The third assignment is without merit. It is not necessary in order to sufficiently prove venue that some witness testify directly that the crime was committed in a designated place. It is enough that evidence incidentally given on the trial of the cause shows that the venue was properly laid. *State v. Fetterly*, 33 Wash. 599, 74 Pac. 810. In this case the evidence was overwhelming and beyond dispute or doubt that the crime, if committed at all, was committed in Spokane county. The order itself on which the information was based is an order to the auditor of Spokane county. The prosecuting witness testifies that she was a witness in a case tried in the superior court of Spokane county, and that the order for the witness fee was written on Gilluly's professional card. The appellant himself testified that he was a practicing attorney in Spokane, and that Mrs. Gray was a witness in the

superior court of Spokane county in a case in which he was
counsel.   He testified that he had a law office in Spokane,
and that it was in his office that she authorized him to get her
witness fees for her, and that he signed the order which was
the cause of the trouble.   The officer testified as to his official
capacity in Spokane county, and to his having delivered the
witness fees to the appellant in his office.   There are not only
many inferences in this testimony tending to show that the
forgery was committed in Spokane county, but there is a
great deal of direct proof to the same effect.

The next contention is that the verdict was against the
evidence.   It is alleged that the evidence did not come up to
that degree of convincing force which is necessary to a con-
viction of crime; that the evidence of Florence Gray, which
was the principal testimony in the case, was suspicious in its
nature and method of expression, inconsistent and contra-
dictory.   In consideration of the character of the prosecut-
ing witness as evidenced by her own testimony and admis-
sions, we are impressed with the idea that the proof against
the appellant was not very conclusive, and that the jury
would have been warranted in finding the appellant not
guilty.   But there was sufficient evidence, if not contradicted
or if believed by the jury, to sustain the verdict, and the jury
being the tribunal upon which the law imposes the duty of
weighing the testimony, it is not the province of this court
to disturb the verdict.

The assignment in relation to the error of the court in
denying appellant's motion for a new trial falls within the
same reason.

The sixth assignment, viz., that the judgment against the
appellant is under the statute which was *ex post facto* as to
him is meritorious.   He was sentenced under a statute which
was approved by the governor on March 13, 1907, and took
effect on June 11, 1907, and the crime of which he was con-
victed was committed on April 11, 1907.   We think it can-

not be questioned that the sentence should have been imposed under the law which was in force and effect at the time the crime was committed. Section 8 of what is termed the "indeterminate sentence act," ch. 155, Laws of 1907, p. 341, contains the following provision:

"Persons convicted of a felony committed prior to the taking effect of this act, and sentenced after this act is in force, shall be sentenced under the law·in force at the time such felony was committed."

The statute seems to be too plain to admit of controversy. But in reversing the judgment of the court for this error it does not follow that the court has lost jurisdiction to pronounce a proper and legal judgment.

"Where there is no reversible error except that, in sentencing, the court has exceeded its power or imposed a sentence which is vague and indefinite, the appellate court on a reversal will not order a new trial, but will remand the case to the trial court for the imposition of a proper judgment and sentence." 12 Cyc. 942, and cases cited.

In discussing the case of *In re Bonner*, 151 U. S. 242, 14 Sup. Ct. 323, 38 L. Ed. 149, Judge Field, in speaking for the supreme court of the United States, said:

"But in such cases there need not be any failure of justice; for, where the conviction is correct and the error or excess of jurisdiction has been as stated, there does not seem to be any good reason why jurisdiction of the prisoner should not be reassumed by the court that imposed the sentence in order that its defect may be corrected. The judges of all courts of record are magistrates, and their object should not be to turn loose upon society persons who have been justly convicted of criminal offenses, but, where the punishment imposed, in the mode, extent, or place of its execution, has exceeded the law, to have it corrected by calling the attention of the court to such excess. We do not perceive any departure from principle or any denial of the petitioner's right in adopting such a course. He complains of the unlawfulness of his place of imprisonment. He is only entitled to relief from that unlawful feature, and that he

would obtain if opportunity be given to that court for correction in that particular."

In that case the application was a petition for a writ of habeas corpus where the prisoner had been sentenced to a penitentiary to which the law did not allow the court to send him. Judge Field further quoted from *Beale v. Commonwealth*, 25 Pa. St. 11, where the court said:

"The common law embodies in itself sufficient reason and common sense to reject the monstrous doctrine, that a prisoner whose guilt is established by a regular verdict is to escape punishment altogether, because the court committed an error in passing the sentence. If this court sanctioned such a rule, it would fail to perform the chief duty for which it was established."

This seems to be the overwhelming weight of authority, and it is a rule to which this court is inclined to yield its allegiance.

The judgment of the court will therefore be reversed, and the cause remanded with instructions to the lower court to pronounce sentence according to law.

ROOT, CROW, FULLERTON, and RUDKIN, JJ., concur.