[No. 15770. Department One. October 4, 1920.]

A. L. TURNER *et al., Respondents,* v. MILDRED D. EDDY *et al., Appellants.*[1]

FRAUD (21, 23)—MEASURE OF DAMAGES—EVIDENCE—ADMISSIBILITY. Upon an issue as to fraud in misrepresenting the value of an apartment house sold to defendant, defendant cannot assert error in refusing to allow evidence of the market value of the house at the time of the sale, where the theory of her defense to an action for the price was an affirmance of the contract and a recoupment in damages for amounts she claimed to have expended in putting the house in as good condition as it was represented to be in.

SAME (22)—MISREPRESENTATION—EVIDENCE—SUFFICIENCY. A finding against the defense of fraud in misrepresenting the condition of an apartment house sold to the defendant, is sustained by evidence that defendant was experienced in running such houses, voluntarily sought and persisted in making the purchase after visiting the house five times and making all the inspection desired, and that a boiler, claimed by her to be defective, was inspected by her and her janitor, and she requested an inspection by city authorities, but concluded the deal without waiting therefor, and the evidence upon other points was conflicting, and she made no complaint relating to matters she learned of within a few days' time, until weeks after maturity of the note for the purchase price.

COSTS (72)—ON APPEAL—APPORTIONMENT. Where personal judgment was inadvertently entered against a defendant husband who was not liable, and the matter was not called to the trial court's attention, though defendant's counsel were in possession of a copy of the judgment for five days and were present when it was signed and did not raise the point on the motion for a new trial, upon appeal from the entire judgment, costs will not be allowed on reversing the judgment as to such defendant.

Appeal from a judgment of the superior court for King county, French, J., entered September 29, 1919, in favor of the plaintiffs, in an action on a promissory note, tried to the court. Affirmed in part and reversed in part.

[1]Reported in 192 Pac. 978.

*Chadwick, McMicken, Ramsey & Rupp, S. F. Chadwick* and *J. E. Peterson,* for appellants.

*J. E. McGrew* and *E. E. Shields,* for respondents.

MITCHELL, J.—The defendant Mildred D. Eddy purchased from the plaintiffs a leasehold interest in the Halmar Apartments, together with the furniture therein, in the city of Seattle. As part of the purchase price, she gave her promissory note in the sum of $2,600, and secured the same by a chattel mortgage on the furniture. Some time after maturity of the note, suit was brought thereon and to foreclose the mortgage. The answer admits the note and mortgage and its nonpayment, and affirmatively seeks by way of counterclaim to recover an amount in excess of the note and mortgage on account of damages because of alleged false representations of the seller as to the condition of the property purchased. There was a judgment in favor of the plaintiffs for the full amount sued for, less the value of a small article of personal property it appears the plaintiffs overestimated the amount of. The defendants have appealed.

Four assignments of error relate to the refusal of the court to allow and consider evidence offered as to the market value of the Halmar Apartments at the time of the sale. That is, that such value, considering the condition appellant claimed at the trial it was in at the time of the sale, was considerably less than the amount she paid for it. Without any solicitation on the part of the respondent, she purchased the property, after several personal examinations and inspections of it, at a price she agreed to pay. In addition, the theory of the affirmative defense was an affirmance of the contract and a recoupment in damages or a counterclaim in certain specified amounts which, with one exception, she claimed she had been compelled to pay to

put the property in as good condition as that she alleged the respondents falsely represented it to be in. The one exception just referred to relates to an apartment consisting of rooms 30 and 31 in the basement, which she alleges were represented to be worth $35 per month, and that, as a matter of fact, they were uninhabitable under the health ordinance of the city, whereby her counterclaim included $1,530 for the rent of those rooms for the whole of the unexpired portion of the term of the lease. It follows that any testimony as to the market value of the property at the time of the sale was immaterial to establish the damages according to the measure thereof which she had preferred in her pleading, and hence the assignments of error upon the subject are without merit.

Other assignments refer to alleged false representations and may be considered together. The parties were strangers and the dealings between them were direct. At that time Mrs. Eddy was a widow (Mrs. Gear), having married Mr. Eddy thereafter and prior to the commencement of the action. She had recently had four or five years' experience in operating apartment houses in the cities of Oakland and San Francisco, California. For some months the respondents had been successfully conducting the Halmar Apartments. She went to the place and inquired if she could purchase the leasehold and furniture. Respondents were not inclined to sell for less than $10,000, but she persisted until finally, about two weeks later, she purchased at the price of $8,250. Altogether she visited the apartments five times before the sale was completed, and examined the property on several of her visits. She testified that representations were made to the effect that the plumbing, wiring and tinting were in good condition and that she relied on the representa-

tions. The record satisfied us, as it evidently did the trial court, that she made all the personal examination she desired, and depended on that rather than upon anything respondents told her. It is perfectly clear that much that was said by respondents was nothing more than the expressions of opinions, and while it is true the appellant made some changes at considerable expense after taking possession, it was because of conditions she saw, or had full opportunity to observe, that did not suit her fancy. It is customary for people moving into a new house to do a lot of cleaning and decorating and it appears that appellant followed the rule. She testified that certain of the tenants left because the plumbing or tinting was poor in their apartments and that the rooms they occupied were not fit to live in. But those persons testified to the contrary, saying they left for other reasons. There is ample testimony that, before the sale, she was taken through the halls and a number of the apartments, the kitchen, closets and reception room, until she stated she had seen enough.

One of the principal items of the controversy was the defective condition of the boiler used in connection with the heating system. It had been inspected by the city authorities, who had issued a certificate accordingly at the last inspection tour required by ordinance. Prior to the sale, the appellant, with her prospective janitor, an experienced man, was taken to the basement to examine the boiler. There was a slight leak in it which was shown to them by the respondent, who led them to believe that was the only defect in the boiler. It appears that, on a Saturday, the appellant requested the city's inspector of boilers to examine it. Without waiting for him to do so, and without any further conversation with the respondent or examination on her part, she concluded the deal on that day. The inspector

found, on the following Monday, some other defect in the boiler, not sufficient, however, to prevent the continued use of it. She claims the other defect amounted to a fraud practiced upon her. We do not think so, for it is plain she and her janitor (who actually worked for her as such after she got possession of the premises and until the date of the trial herein) examined the boiler as much as they wished, that she called on the city's officer to make an inspection (negativing the idea she relied on respondents' representations or opinion), and there is no testimony to show that respondents knew of the other defect complained of.

The most important item of this dispute relates to the apartment in the basement. The substance of her testimony is that she desired to examine those rooms and he refused, and that again, when she and her prospective janitor were in the basement to examine the boiler, she then desired to examine rooms 30 and 31, and that on both occasions he told her the rooms were all right, as good as any in the house, and that to disarm her he devised the cunning excuse that he did not want her to see the rooms because to do so would disturb the janitor, who might quit work. By a city ordinance, habitable rooms in apartment houses shall not be less than eight feet, four inches, in height from floor to ceiling. Rooms 30 and 31 in the Halmar Apartments are not in excess of six feet in height. Her testimony further shows that, on July 2, the district sanitary inspector served upon her a written notice not to use the basement as an apartment. The inspector testified: "The rooms in the basement did not meet the building requirements with regard to air space." That it might possibly meet the requirements with regard to construction of walls—he did not know. On the contrary, respondent's testimony is a positive denial of any refusal to let her examine the two rooms or that

he said anything about disturbing his janitor. His janitor (Mr. Crawford) and family, consisting of wife, daughter and son-in-law, occupied the two rooms during all the time respondents had possession of the premises. On being asked what, if anything, he said prohibiting the appellant from entering those rooms, he answered: "There was nothing said. Christopher (appellant's prospective janitor) and his wife walked inside of Mr. Crawford's apartment—opened the door—Mrs. Crawford opened the door for him. Mrs. Crawford was there, but just what was said and done I don't remember." There was no categorical denial of this by either the appellant or the Christophers, all of whom were witnesses at the trial. During the occupancy of the rooms by the janitor and his family, the health officer visited the house on several occasions and never raised any objections to the basement apartment. The two rooms are situated in one corner of the concrete basement floor. There is no proof that either the respondent or Mrs. Eddy or Mr. Christopher had any actual knowledge of the requirement of the health ordinance concerning the air area of habitable rooms; nor is there any evidence that any of them, at any time during the visit and examination, took any measurement of or said anything about the height from the floor to the ceiling in the basement.

This case is one which must be determined from the weight of evidence. There are many details, of course, it would be useless to discuss. There is a sharp conflict in much of the evidence, but we are satisfied that the proof is clearly with the respondents. It is plain to be seen that the appellant was a woman of experience in the business she was undertaking; to that extent she had confidence in her own judgment, or sought the advice of others than the respondent, which of itself indicates judgment. The burden of the proof

shows the respondent did nothing to mislead her. Nor did he leave undone anything to advise her. She was taken to rooms until she said she had seen enough. A long inventory of furniture, etc., was checked from time to time, both before and on the next day after the sale, until she said she was tired of it. At the trial she claimed to have learned within a few days that many things had been misrepresented to her; and yet, by her own admission, she made no complaint whatever until weeks after the maturity of her note and about the time suit was threatened against her.

Complaint is made that the judgment erroneously runs against Mr. Eddy. It seems to have been an inadvertence on the part of the respondents in writing the judgment. Mr. Eddy and his wife were in possession of the property, which evidently was the reason for making him a party defendant. The complaint did not seek a personal judgment against him, and respondents admit in this court they are not contending for it now. It appears that counsel for appellants were present in court at the signing of the judgment, having had a copy of the proposed judgment in their possession for five days, and raised no objection to its form, and in their exceptions made no special reference to that fact. It appears the point was not called to the attention of the trial court in the motion for a new trial, which was submitted without argument. However, the judgment is erroneous and must be reversed in this respect; but, under the circumstances, respondents will recover their costs on appeal.

The judgment is reversed so far as it provides for the recovery of money against W. M. Eddy. In all other respects it is affirmed.

HOLCOMB, C. J., PARKER, MACKINTOSH, and MAIN, JJ., concur.