[No. 21990.   Department One.   February 3, 1930.]

THE STATE OF WASHINGTON, *on the Relation of L. H. Walker, Appellant,* v. H. Z. DEAN, *Respondent.*[1]

*Caldwell & Lycette,* for appellant.

*The Attorney General, V. D. Bradeson,* and *E. K. Brown,* for respondent.

[1] Reported in 284 Pac. 756.

BEALS, J.—Plaintiff and relator presented to the superior court an information in the nature of *quo warranto,* alleging that the city of Ellensburg is a municipal corporation and a city of the third class, and that, prior to January 1, 1929, the defendant H. Z. Dean was the acting health officer thereof; that relator holds a license from the state of Washington authorizing him to practice osteopathy and surgery, and that, on January 1, 1929, the mayor of the city of Ellensburg appointed relator to the office of city health officer; that this appointment was confirmed by the city council, and that relator accepted the appointment and qualified thereunder; that, notwithstanding relator's appointment, defendant Dean continues to unlawfully hold the position of health officer, and refuses to vacate that office. Relator prayed for a judgment declaring that he is the lawful health officer of the city of Ellensburg and for the usual incidental relief.

To this information defendant demurred, his demurrer being sustained by the trial court. Relator electing to stand upon his information, judgment was entered dismissing the action, from which judgment relator appeals.

Section 6092, Rem. Comp. Stat. (Laws of 1907, p. 163, ch. 85, § 2) reads as follows:

"The mayor of every incorporated city and town except cities of the first class, shall each year appoint a legally qualified physician city health officer whose compensation shall be fixed by the city council and whose term of office shall be until January 31st of the year following that in which he is appointed or until his successor is appointed and qualified: Provided, that in cities of the second class having a board of health the board of health shall appoint the health officer: Provided further, that health officers of cities of the third class elected at the last city election shall hold such office until the expiration of the term for which they were elected."

The question presented on this appeal is whether or not appellant, being licensed to practice osteopathy and surgery, is a "legally qualified physician" within the meaning of this section.

In the session Laws of 1889-90, p. 114, is found the first law enacted by the legislature of this state regulating the practice of medicine. By this act there was created an examining board, and provision made for the licensing of persons to practice "medicine and surgery." In 1909, another law was passed (Laws of 1909, ch. 192, p. 677) providing for the creation of a board of medical examiners composed of five members "from the medical profession," two homeopaths and two osteopaths, the issuance of three different forms of license being provided for. This act did not attempt to define the practice of osteopathy, nor did it provide for the licensing of osteopaths as surgeons.

In 1919, the legislature passed another act regulating the practice of medicine (Laws of 1919, ch. 134, p. 372). At the same session, an act was passed regulating the practice of osteopathy (Laws of 1919, ch. 4, p. 4), providing for the appointment of examiners to conduct examinations of applicants for licenses to practice osteopathy.

Under the laws now in force, an osteopath stands the same examination in surgery as does an applicant for an unlimited license, and, upon passing the examination, receives a license authorizing the practice of surgery in all of its branches. An osteopath is also examined in all subjects upon which an applicant for an unlimited license is examined, save that an osteopath takes no examination in *materia medica.*

In addition, an applicant for an osteopathic license undergoes an examination in the principles and practice of osteopathy.

Section 10072, Rem. Comp. Stat., reads as follows: "On all cards, signs, letter-heads, envelopes and bill-heads used by those licensed by this act to practice osteopathy or osteopathy and surgery the word 'osteopathic' shall always immediately precede the word 'physician' and if the word 'surgeon' is used in connection with said name, the word 'osteopathic' shall also immediately precede said word 'surgeon.' "

The term "physician" is nowhere defined in the laws of this state. The word is of extremely ancient origin, and generally speaking means, "a person skilled in physic, or the art of healing." (Webster's New International Dictionary.)

It is clear that a regularly licensed osteopath is a physician, within the broad or general definition of the word.

Respondent argues, however, and the trial court held, that an osteopath is not a "legally qualified physician" within the meaning of § 6092, *supra*. The section last referred to was enacted in 1907, at which time no law existed authorizing the issuance of licenses to osteopaths authorizing them to practice that branch of the medical profession in this state. The first law authorizing the issuance of licenses to osteopaths was enacted in 1909. It must be admitted, therefore, that osteopaths were not within the contemplation of the legislature when it in 1907 enacted § 6092, *supra*.

Respondent contends that the law of 1907 must be construed as of the date when it was enacted, and, in support of this contention, cites *Bloomer v. Todd*, 3 Wash. Terr. 599, 19 Pac. 135, 1 L. R. A. 111, and *Linn v. Reid*, 114 Wash. 609, 196 Pac. 13. Appellant concedes that these two cases afford some support to respondent's position, but contends that, in so far as such is the case, the two cases cited are out of harmony with other cases decided by this court, and that the correct

rule is that the act of 1907 must, as to the questions to be determined on this appeal, be construed as of the date of appellant's appointment. In support of this contention, appellant cites the case of *Corkery v. Hinkle,* 125 Wash. 671, 217 Pac. 47, and the authorities therein referred to and relied upon.

In the case of *Bloomer v. Todd, supra,* the territorial supreme court held void an act of the legislative assembly attempting to confer the right of suffrage upon women, as in conflict with the organic act of the territory, limiting the right of suffrage to citizens of the United States, and decided that the word "citizen," as used in the enabling act, must be construed as meaning only male citizens. While some of the language of the opinion supports respondent's contention, when considered in connection with the subject-matter of the opinion and the sense in which the language was used, we do not find that the case is controlling upon the questions now under discussion.

In the later case of *Linn v. Reid, supra,* this court held that a statute of this state to the effect that all property obtained by "larceny" should be returned to the owner thereof, and that no sale of such property should divest the owner of his rights, referred to larceny as defined by a law in force when the statute referred to was enacted, which definition did not include the offense of obtaining money or property by false pretenses, that being then a distinct crime, although larceny as later defined included that offense. While the case was a civil action for the recovery of an automobile, the question at issue turned largely upon the construction of a criminal statute. It was held that the word "larceny" should be construed according to the definition of that word as contained in the law in force at the time the statute relied upon was enacted, and that the meaning of the term was not

subsequently enlarged by a later and broader statutory definition of larceny by which the offense was made to include the obtaining of property by false pretenses.

The question then presented to the court involved a right of property, and it was properly held that the term "larceny" as used in the act authorizing the recovery of stolen property by the owner thereof must be limited to the definition of the word as contained in the law in force at the time the statute which the plaintiff relied upon was enacted. The case cited presented a different question from that presented here, in which a statute prescribing the qualifications for the holding of a public office is to be construed.

In the case of *Corkery v. Hinkle,* 125 Wash. 671, 217 Pac. 47, it was held that the act of 1909 (Laws of 1909, Ex. Ses., p. 62, § 1; Rem. Comp. Stat., § 3799 *et seq.*) relating to the filling of vacancies in the office of representative in congress of the United States, is a special act, which by its terms (Rem. Comp. Stat., § 3802) incorporates in itself all general laws not inconsistent therewith relating to the subject-matter thereof, and that consequently the act of 1915 (Rem. Comp. Stat. § 5280), providing for absentee voting at certain primaries, applies to special elections of the class above referred to, there being no inherent inconsistency between absentee voting at special and general elections. The questions were presented upon an original application filed in this court for a writ of mandamus requiring the secretary of state to certify the nomination of plaintiff and relator as a candidate to fill a vacancy in the office of representative in congress. It was urged on behalf of relator that the act of 1915 did not become a part of the act of 1909, and that consequently the law contained no provision for absentee voting at

such a primary as that in which relator had participated.

It is of course true that the special act then under discussion, by its terms, adopted to itself all general laws not inconsistent therewith. We think that the principles upon which the decision in the last case was based should be applied to the construction of the statute now being considered, defining the qualifications of city health officers. In its opinion, this court discussed the questions involved at considerable length, and referred to many authorities, including several opinions of this court. The following language of Judge Fullerton in the case of *Orrock v. South Moran Township,* 97 Wash. 144, 165 Pac. 1096, is peculiarly applicable to the case at bar:

"It is a well settled rule 'that a statute may include by inference a case not originally contemplated, when it deals with a genus within which a new species is brought by a subsequent statute.'"

The statute providing for the appointment of city health officers and stating the qualifications for such officials uses general terms. The act does not attempt to define the words which it uses in prescribing the qualifications which an appointee must possess, and for the definition of the term used, reference must be had to general laws. This is not an instance in which a statute names several classes of eligibles, and because thereof, classes not specifically named are deemed excluded. Such a rule of statutory construction is not applicable to the case at bar.

The following quotations from Ruling Case Law are in point:

"A general law may, and frequently does, originate in some particular case or class of cases which is in the mind of the legislature at the time but so long as it is expressed in general language the courts cannot,

in the absence of express restrictions, limit its application to those cases, but must apply it to all cases that come within its terms and its general purpose and policy. Hence statutes framed in general terms apply to new cases that arise, and to new subjects that are created, from time to time, and which come within their general scope and policy. It is a rule of statutory construction that legislative enactments in general and comprehensive terms, prospective in operation, apply alike to all persons, subjects and business within their general purview and scope coming into existence subsequent to their passage." 25 R. C. L., p. 778, § 24.

"Since it is the duty of the courts to ascertain the meaning of the legislature from the language of the statute, general words are to have a general operation unless the manifest intention of the legislature affords grounds for qualifying or restraining them." 25 R. C. L., pp. 970-971, § 223.

The Cyclopedia of Law and Procedure states the doctrine as follows:

"Where a statute is expressed in general terms and in words of the present tense it will as a general rule be construed to apply not only to things and conditions existing at its passage, but will also be given a prospective interpretation, by which it will apply to such as come into existence thereafter." 36 Cyc., p. 1235, § 7.

Other texts to the same effect are referred to in the opinion in the case of *Corkery v. Hinkle, supra,* pages 676-677.

We are convinced that, in construing § 6092, *supra,* in so far as the same prescribes qualifications for city health officers, reference must be had to the laws in force at the time an appointment thereunder be made, and that the inquiry is not governed by those laws which were in force at the time the act was passed.

The question as to whether or not appellant was, at the time of his appointment, "a legally qualified physician" within the purview of § 6092, *supra,* must

now be considered. By § 10072, Rem. Comp. Stat., *supra,* he is prohibited from using upon his cards, letter-heads, etc., the word "physician" in connection with his name, unless that word shall be preceded by the word "osteopathic." Appellant, therefore, is not under the law a physician in the broadest sense of that term, but is a qualified physician only. He is, according to the allegations of his information herein, under the law a legally qualified osteopathic physician. Is he, as such, qualified under § 6092, *supra,* to fill the position of city health officer?

By Rem. Comp. Stat., § 6012, all "physicians" are required to register with the county auditor, and to report to him monthly all births and deaths. By Rem. Comp. Stat., § 6032, every physician, etc., is required to register in the district in which he resides. By Rem. Comp. Stat., §§ 6022, 6023 and 6002, attending physicians are required to report births, deaths and contagious diseases.

By Rem. Comp. Stat., § 10070 which reads as follows:

"All persons granted licenses or certificates under this act shall be subject to the state and municipal regulations relating to the control of contagious diseases, the reporting and certifying to births and deaths, and all matters pertaining to public health; and all such reports shall be accepted as legal,"

osteopathic physicians are directly brought within the purview of the sections last above mentioned.

Under the law, osteopaths are fully qualified surgeons. They are examined in obstetrics, just as physicians desiring to engage in general or unrestricted practice are examined.

In this connection, we have read the opinion of this court in the case of *State v. Bonham,* 93 Wash. 489, 161 Pac. 377, L. R. A. 1917D 996, in which the convic-

tion of an osteopath of a misdemeanor because of his treatment of a patient involving the removal of the patient's tonsils was concerned. This decision construes the act of 1909, which did not provide for the examination of osteopaths in surgery or their licensing to practice that profession. This court properly held that, under the law then in force, an osteopath had no license to practice surgery, and that the appellant in the case at bar had been properly convicted of violation of the act under which he had received his certificate.

Respondent also relies upon the case of *State v. Pollman,* 51 Wash. 110, 98 Pac. 88, in which the conviction of the appellant of the crime of practicing medicine without a license was affirmed. It was admitted that the appellant had no license, and that his atack upon the act under which he was convicted was based largely upon constitutional grounds, none of which had merit. The appellant had no license of any kind authorizing him to practice medicine, and was properly convicted of violation of the existing medical practice act.

In the case of *State v. Rust,* 119 Wash. 480, 206 Pac. 33, this court upheld the conviction of an osteopath who had been charged with practicing medicine without a license. It appeared that the appellant, a regularly licensed osteopathic physician, had advertised himself as an eye specialist. It was held that, under Laws of 1919, ch. 144, p. 396 (Rem. Comp. Stat., § 10147), ''An act defining the practice of optometry,'' appellant's conviction should be affirmed. Section 15 of the optometry act (Rem. Comp. Stat., § 10159) excepted from the operation of the act, '' . . . the practice of any regularly qualified oculist or physician, who is regularly licensed to practice medicine in the state of Washington, . . . '' and appellant claimed

that he, being a licensed osteopathic physician, was a regularly qualified physician within the exception specified in § 15, *supra*. It was held that an osteopathic physician was not, by virtue of his license as such, authorized to practice optometry.

The rule laid down is not controlling here. The optometry act provides for the licensing of practitioners thereunder, but, by § 15 thereof, excepts from the operation of the act those physicians who possess unlimited or unrestricted licenses for the practice of medicine and surgery.

It was the manifest intention of the legislature to prohibit the holders of restricted licenses from practicing branches of the art of healing not embraced within the subjects upon which the licensee had been examined, and which by his certificate he was authorized to practice. The court says that § 15 of the act cannot be construed as sufficiently elastic to except from the general provisions of the act " . . . any regularly qualified physician, who is regularly licensed to practice osteopathy . . . " and thereby indicated that it considered the appellant a "regularly qualified physician," although in a restricted sense. It must be remembered that § 6092 *supra* is not an act authorizing any one to practice medicine and surgery. In so far as the subject-matter of this inquiry goes, the act simply states the professional qualifications required for a certain office. It may be noted that cities of the first class are excepted from the operation of that section, and no act has been called to our attention prescribing any qualifications whatever which must be possessed by a person named as health officer of a city of the first class.

The administrative act of 1921 established a state department of health (Rem. Comp. Stat., § 10761). A portion of this act provides for the appointment of

a director of health, who must, under Rem. Comp. Stat., § 10814, "be an experienced physician," a general term used without apparent restriction or limitation.

Consideration of all the statutory law of this state having any bearing upon the question here presented, together with the decisions and established rules of statutory construction, leads us to the conclusion that, according to the allegations of his information, appellant is eligible to hold the office to which he was appointed.

The judgment appealed from is reversed, with instructions to overrule the demurrer interposed by respondent to appellant's information.

MITCHELL, C. J., PARKER, TOLMAN, and MILLARD, JJ., concur.