[No. 23803. Department Two. November 30, 1932.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN E. LYDON, *Appellant.*[1]

[1] Reported in 16 P. (2d) 848.

*Hartman & Hartman,* for appellant.

*Robert M. Burgunder, William J. Wilkins,* and *Ben A. Maslan,* for respondent.

STEINERT, J.—This is an appeal from a judgment of conviction and sentence for the crime of practicing medicine and surgery without a license. A complaint, filed in the justice court in and for Seattle precinct, charged the defendant with unlawfully practicing, and holding himself out as practicing, medicine and surgery, in this:

"That he, the said defendant, John E. Lydon, did then and there treat and pretend to treat and heal one Jennie Neihuis, a human being, for disease and physical condition, to-wit: cancer of the breast, by severing and penetrating the tissues of said Jennie Neihuis, a human being, by use of surgical instruments without having at the time of so doing a valid unrevoked certificate issued by the Board of State Medical Examiners of the State of Washington or by the State Director of Licenses of the State of Washington authorizing said defendant to practice medicine and surgery in the State of Washington."

Upon conviction in the justice court, the defendant appealed to the superior court for King county, where, upon a trial before the court, a jury having been waived, he was again convicted and was sentenced to pay a fine of five hundred dollars. The defendant now appeals to this court.

The facts, as shown by the evidence, and on which the complaint and conviction are predicated, are these: The appellant is a sanipractor. Sanipractic is a form of drugless healing defined and promulgated by the appellant. On August 12, 1930, Mrs. Jennie Neihuis, who was then suffering from cancer of the breast in

its advanced stage, consulted appellant, who, after an examination, pronounced it a serious case, but stated that he could effect a cure in three months. Mrs. Neihuis placed herself under the appellant's charge for treatment, and the appellant contracted to perform the necessary services. The course of treatment consisted largely of keeping the patient upon a liquid diet with frequent hot baths. It was the theory of the appellant that the general condition of the body should be improved as much as possible by aiding the eliminative processes, and at the same time the cancer would be brought to a head, when it could be treated as boils are commonly treated, that is, by lancing.

The passage of time and the treatment prescribed, however, did not produce the expected improvement. On the contrary, the patient grew worse, and, on November 30th or December 1st, she was in a desperate condition. On the latter date, the appellant and his assistant made three or four calls upon the patient, and finally, at about 5:30 o'clock in the afternoon, the appellant made preparations for an operation. After thoroughly sterilizing two lancets, he made an incision with one of them upon the patient's breast, to a length of about one and one-half inches and to a depth of about a half inch. From the incision thus made, a great deal of blood and pus exuded.

The appellant remained with the patient until about 7:15 o'clock. At 8:00 o'clock, she was hurriedly taken to the city hospital in Seattle as an emergency case, though not at the direction of the appellant. The next day, the appellant phoned to the hospital regarding the patient, and later called in person and examined her. At that time, he suggested and offered to administer a further line of sanipractic treatment, but, not being a member of the regular school of physicians, he

was not permitted to treat the patient. Mrs. Neihuis died January 4, 1931.

At the trial, the appellant testified that, when he was first consulted by Mrs. Neihuis, he specifically outlined the treatment to be given by him; that he fully explained to the patient the different stages that the recovery would go through; that, after a period of suppuration, attended with great pain, the cancer would come to a head in the form of a boil, at which time means would be taken to drain and remove the poison which had thus become localized. He also testified that the treatment administered during the preliminary period had resulted in the acute condition which called for the operation.

Two major questions present themselves for our consideration and determination: (1) Under the statutes of this state, may a person who is licensed as a drugless healer, practice surgery? and (2) Did the act or acts of the appellant constitute practicing surgery? A third question is directed to the legality of the sentence imposed.

The first question involves the interpretation of certain sections of chapter 134, Laws of 1919, p. 372, which relates to the practice of medicine and surgery, and also involves the interpretation of certain sections of chapter 36, p. 64 (Rem. Comp. Stat., § 10112), of the same session laws, which is the drugless healers' act.

To get a proper perspective, however, it is well, first, to notice briefly the statutory law that covered these fields of science, or art, prior to the acts in question. Chapter 192, Laws of 1909, p. 679, § 6, Rem. & Bal. Code, § 8391 (Rem. Comp. Stat., §10008), entitled "An Act for the regulation of the practice of medicine and surgery, osteopathy and other systems or modes of

treating the sick or afflicted . . .," provides as follows:

"Three forms of certificates shall be issued by said board under the seal thereof, and signed by the president and secretary: First, a certificate authorizing the holder thereof to practice medicine and surgery; second, a certificate authorizing the holder thereof to practice osteopathy; third, ·a certificate authorizing the holder thereof to practice any other system or mode of treating the sick or afflicted not referred to in this section."

Under the statute just quoted, if it still obtained, the appellant would fall under the third classification of certificates, which authorized the holders thereof to practice any system or mode of treating the sick or afflicted, other than that of medicine and surgery, or osteopathy.

In *State v. Bonham,* 93 Wash. 489, 161 Pac. 377, L. R. A. 1917D 996, the defendant, an osteopath, was convicted of the crime of practicing medicine and surgery without a license so to do, in that, having taken a case of tonsilitis for treatment, he subsequently administered an anesthetic and removed the tonsils by means of a snare and knife. In sustaining ·the conviction, this court held squarely that, under that statute, one licensed to practice osteopathy, as that system was then taught, could not practice surgery, and that the defendant's certificate did not authorize him to resort to the form of treatment followed by him. In its discussion of the case, the court pointed out that, since the passage· of the 1909 statute, schools of osteopathy had extended their curricula, and that the more modern of them were teaching, in some degree, much that was being taught in the older schools of medicine; that even surgery was being recognized by· them as the proper form of treatment in certain cases. These observations of the court are of interest, we think, be-

cause of the change in legislation that subsequently took place, and which we will now notice in some detail.

By 1919, various systems of the healing art had come into settled vogue, and were being adopted and patronized with varying degrees of recognition by the public generally. The legislature, therefore, in that year essayed to cover, and also to discriminate between, the various kinds or classifications of the healing art. Chapter 4, Laws of 1919, p. 4, relates to osteopathy, and to osteopathy *and surgery*. Chapter 5, p. 18 (Rem. Comp. Stat., § 10073), regulates the practice of chiropractic. Chapter 36, p. 64 (Rem. Comp. Stat., § 10112), governs the practice of drugless healing, which includes sanipractic, though not specifically named. Chapter 134, p. 372, covers the general practice of medicine and surgery.

We will examine these various acts somewhat out of their chronological order.

The act relating to the general practice of medicine and surgery, chapter 134, Laws of 1919, p. 373, *supra,* provides in § 3:

"Only one form of certificate shall be issued by the said board. Such certificate shall be under the seal of the board and signed by the president and secretary, and shall authorize the holder thereof to practice medicine *and surgery* within this state. Upon compliance with the requirements of this act by an applicant for a license to practice medicine *and surgery* in this state, the board shall issue such certificate, authorizing the holder thereof to use drugs or what are known as medicinal preparations in or upon human beings *and to sever or penetrate the tissues of human beings and to use any and all other methods in the treatment of diseases, injuries, deformities, or other physical or mental conditions.*" (Italics ours.) Rem. Comp. Stat., § 10008.

Section 4, p. 375 (Rem. Comp. Stat., § 10009), provides that applicants for certificates must attain a pre-

scribed grade in an examination upon the following fundamental subjects: Anatomy, histology, gynecology, pathology, bacteriology, chemistry, toxicology, physiology, *obstetrics,* general diagnosis, hygiene, *practice of medicine and surgery* and any other branches thereof that the board shall deem advisable.

Section 8, p. 379, provides as follows:

"Any person who shall practice or attempt to practice, or hold himself out as practicing medicine and *surgery* in this state, without having, at the time of so doing, a valid, unrevoked certificate as provided in this act, shall be guilty of a misdemeanor." (Italics ours.) Rem. Comp. Stat., § 10018.

Section 12, p. 381 (Rem. Comp. Stat., § 10024), provides that the act shall not be construed as applying to the practice of osteopathy or to any drugless method of treating the sick.

In the act regulating the practice of osteopathy, chapter 4, Laws of 1919, p. 4, *supra* (Rem. Comp. Stat., §§ 10056 to 10073), two forms of certificates are provided for—one, a certificate to practice osteopathy, and the other to practice osteopathy *and surgery.* Applicants for certificates to practice osteopathy are required to stand an examination in each of the following subjects: Anatomy, histology, gynecology, pathology, bacteriology, chemistry, toxicology, physiology, *obstetrics,* general diagnosis, hygiene, principles and practice of osteopathy, and any other branches thereof that the board shall deem advisable. Those seeking certificates to practice osteopathy and surgery are required to stand further examination in *surgery* and the management of *surgical* cases (including anesthetics). It will be noticed that a certificate to practice only osteopathy requires no examination in surgery or the management of surgical cases, while a certificate to

practice osteopathy *and surgery* does require such examination.

Section 14, p. 15 (Rem. Comp. Stat., § 10066), provides that any person who shall practice or attempt to practice, or hold himself out as practicing, osteopathy or osteopathy and surgery in this state, without having, at the time of so doing, a valid, unrevoked certificate as provided in the act, shall be guilty of a misdemeanor.

Chapter 5 of the Laws of 1919, p. 18, *supra,* comprising Rem. Comp. Stat., §§ 10098 to 10111, inclusive, regulates the practice of chiropractic. Applicants for certificates under this act are required to stand examinations in the following subjects: Anatomy, physiology, hygiene, symptomatology, nerve-tracing, chiropractic-orthopedy, principles of chiropractic and adjusting, as taught by chiropractic schools and colleges. Section 6 (c) of the act provides as follows:

"Any chiropractor who has complied with the provisions of this act may adjust by hand any articulation of the spine, but shall not prescribe for or administer to any person any medicine or drugs now or hereafter included in materia medica, nor practice *obstetrics,* nor practice *osteopathy or surgery.*" (Italics ours.) Rem. Comp. Stat., § 10101.

It will be noticed that surgery is not included in the subjects of examination nor in the authorization of the certificates to practice. By § 15 of the act, failure to comply with the provisions thereof constitutes a misdemeanor.

Chapter 36, Laws of 1919, p. 64 (Rem. Comp. Stat., §§ 10112 to 10125), with which we are here particularly concerned, regulates the practice of drugless healing. Section 3, p. 65, provides that applicants for licenses shall stand examination in each of the following subjects: Anatomy, physiology, hygiene, symptomatology,

urinalysis, dietetics, hydrotherapy, radiography, electrotherapy, gynecology, *obstetrics,* psychology, mechanical and manual manipulation. The section further provides for a lesser number of subjects for examination, in case the applicant has been in practice for a specified time prior to the passage of the act. It also provides that, after 1921, the following subjects shall be construed as common to all systems under the act: Anatomy, physiology, hygiene, urinalysis, symptomatology, hydrotherapy and gynecology.

Section 4, p. 67, provides for the issuance of five forms of certificates, as follows: First, a certificate authorizing the holder thereof to practice mechanotherapy; second, a certificate authorizing the holder thereof to practice suggestive therapeutics; third, a certificate authorizing the holder thereof to practice food science; fourth, a certificate authorizing the holder thereof to practice physcultopathy; fifth, a certificate for any other separate and co-ordinate system of drugless practice. The same section also provides as follows:

"Practitioners hereunder shall confine their practice to the subjects and system or systems represented by their certificate or certificates granted by said board." Rem. Comp. Stat., § 10114.

We have gone to some length in setting out the legislative provisions relative to the various systems of the healing art, and possibly at the risk of some tedium to the reader. We have done this, however, in order to present the background from which our conclusions proceed.

A comparative study and analysis of the various acts referred to hereinabove leads to the inevitable conclusion that the legislature intended to provide, and did provide, that holders of full licenses to practice, that is, members of the regular school, so-called,

should be authorized to use drugs or medicinal preparations in or upon human beings, to sever or penetrate the tissues of human beings, that is, practice surgery, and to use any and all other methods in the treatment of disease, injuries, deformities or other physical or mental conditions; further, that practitioners in all other schools mentioned were to be restricted to their own particular methods of healing, under the respective systems taught by them, and under the certificates· respectively issued to applicants therefor. It is also apparent that the drugless healers' act did not, expressly or by inference, make any provision for an examination in surgery, or for the issuance of certificates to practice surgery.

We think that the decisions of° this court, rendered since the passage of the 1919 legislation, indicate our trend of view and forecast the conclusions that we herein express. In *State v. Rust,* 119 Wash. 480, 206 Pac. 33, which drew a line of distinction between an osteopath and an optometrist, the court, referring to § 3, chapter 134, Laws of 1919, p. 373 (Rem. Comp. Stat., § 10008), *supra,* which is a portion of the act covering the general practice of medicine and surgery, said, on p. 487:

"The authority given by this form of license covers a field that is·all inclusive, while that of each of the other kinds of practitioners is limited in its scope."

In *Wilcox v. Carroll,* 127 Wash. 1, 219 Pac. 34, the court said, on pp. 2 and 3:

"Appellant is what is called a sanipractor physician, not licensed as a full sanipractor, but licensed to use the methods of· treating disease known as hydrotherapy, dietetics, electrotherapy, and psycotherapy. Such practitioners are not permitted to use drugs such as physicians of the regular schools use, nor to perform operations."

In *Brooks v. Herd,* 144 Wash. 173, 257 Pac. 238, a malpractice case, the court, in referring to the drugless healers' act, said, on p. 176:

"Under the statutes above cited, drugless healers are strictly limited, each to his own school of practice, and forbidden to invade the field of practice of any other school of drugless healing or of any regular school of healing."

In *Laughney v. Maybury,* 145 Wash. 146, 259 Pac. 17, wherein was presented the question whether an osteopathic physician and surgeon had exceeded the limit of advertising prescribed by the statute, the court said, p. 154:

"The legislature has the right to classify, and through all the years it has treated these different schools, also chiropractors, drugless healers, chiropodists and dentists, as belonging to different classes. Any act pertaining to any one of them has been a separate and distinct act. Different qualifications are required and different examinations given. The means employed by the different schools for the treatment of diseases are different and, in some cases, limitations imposed as to the diseases that may be treated."

In *State ex rel. Walker v. Dean,* 155 Wash. 383, 284 Pac. 756, a case involving the right of physicians authorized to practice osteopathy and surgery to hold the position of city health officer, the court, adverting to the series of legislative acts passed in 1919, said, on p. 393:

"It was the manifest intention of the legislature to prohibit the holders of restricted licenses from practicing branches of the art of healing not embraced within the subjects upon which the licensee had been examined, and which by his certificate he was authorized to practice."

Appellant makes some contention that, since the examination which drugless healers are required to take

includes obstetrics, and since obstetrics at times may involve a form of surgery, therefore he was entitled, in the instant case, to use surgery to the extent performed by him. The extent to which appellant may go in obstetrical cases, whether he is limited, so far as surgery is concerned, to a severance of the umbilical cord, or whether he may perform orificial surgery in removing the afterbirth, or whether he may go to the full length of performing a Caesarean operation, it is not necessary for us to determine here. This is not an obstetrical case, but involves an operation for cancer. We are satisfied that it was wholly beyond the appellant's authorization to do this.

Our answer, then, to the first question is that drugless healers, including sanipractors, may not practice ·surgery unless specifically authorized by a proper certificate. The extent to which the practice of obstetrics may go, it is not necessary to determine here.

The second question before us is whether the act or acts of the appellant constitutes practicing surgery. Appellant contends that the statute does not condemn individual and sporadic acts, but merely the general holding out of oneself as being regularly engaged in the practice of surgery. He also contends that his act was merely an incidental, casual and emergent one and, as he terms it, the act of a "Good Samaritan," under the stress of immediate circumstances. We do not agree with either of these contentions. The statute censures and forbids, not only the holding out of oneself as being so engaged generally, but also condemns the practice of, or the attempt to practice, surgery specifically. In 21 R. C. L., § 16, p. 369, we read:

"Practicing medicine or surgery does not mean continued or habitual professional acts but, as the object of a restrictive statute is the protection of the public

and as a member of the public is endangered by one act of an unqualified practitioner, so a single act may be practicing, or sporadic visits into the territory covered by the statute and consequent professional acts."

If the rule were otherwise, complaints and convictions in such cases would have to be founded upon a general readiness to disobey the statute, rather than upon a specific act, or acts, of violation thereof.

The act of appellant was not an incidental, casual or emergent act. The evidence amply discloses that it was fully anticipated by both appellant and his patient that the development and final result of the disease were explained and provided for, and that, at the time of the operation, appellant went to the place where the patient was, equipped to make the incision, and made preliminary preparation therefor by sterilizing his instruments for a period of about forty minutes. The act, therefore, was not incidental, casual or emergent; it was deliberate, designed and prearranged.

The appellant makes some further contention that his right to practice surgery arises by virtue of his right to practice mechanotherapy and mechanical manipulation. These terms mean simply a remedial treatment consisting of manipulating a part, or the whole, of the body, with the hand or by mechanical means. In plain English, they mean massage, manually or mechanically performed. They certainly do not include the practice of surgery in any form.

Finally, the appellant assigns as error the imposition of a fine in excess of that prescribed by law. The court assessed a fine of five hundred dollars. The maximum allowed by the statute is two hundred and fifty dollars. Obviously, this calls for a correction of the judgment and sentence. The error, however, does not justify a reversal of the entire case. All that is required is that the case be remanded for the imposi-

tion of a proper sentence. *State v. Gilluly,* 50 Wash. 1, 96 Pac. 512; *State v. Andrews,* 71 Wash. 181, 127 Pac. 1102; *State v. Clark,* 98 Wash. 81, 167 Pac. 84.

Inasmuch as the error was manifestly an inadvertent one, and that it could easily have been corrected had the appellant called it to the trial court's attention, which he failed to do, the respondent will be permitted to recover costs on this appeal. *Turner v. Eddy,* 112 Wash. 652, 192 Pac. 978; *Wicklund v. Allraum,* 122 Wash. 546, 211 Pac. 760; *Wilhite v. Ludwig,* 154 Wash. 541, 282 Pac. 847; *Peterson v. Crockett,* 158 Wash. 631, 291 Pac. 721.

Remanded with direction to the court to enter a judgment and sentence in harmony with the statute.

TOLMAN, C. J., HERMAN, MAIN, and BEALS, JJ., concur.

