THE STATE OF WASHINGTON, *Respondent*, v. JAMES ALLEN WILSON, *Appellant*.

*Don W. Taylor* and *Clifford L. Stilz, Jr.* (of *Fristoe, Taylor & Schultz*), for appellant.

*Slade Gorton, Attorney General,* and *John H. Keith, Assistant,* for respondent.

PEARSON, C.J.—This appeal concerns the scope of practice of chiropractors and drugless healers in this state. The defendant, James A. Wilson, was enjoined by the trial court

from using needles or other means to penetrate human tissues, from practicing acupuncture, and from prescribing or administering any drugs.

On appeal the defendant objects to the specific application of the injunction, arguing that he should be allowed to take blood samples for diagnostic purposes, practice galvanic acupuncture (a form of electrotherapy), prescribe or give vitamins, minerals, and food supplements to his patients.

We note initially that article 20, section 2 of the Washington State Constitution vests exclusive authority in the legislature to "regulate the practice of medicine and surgery, and the sale of drugs and medicines." It thus becomes necessary to examine the statutes which regulate the practice of chiropractic and drugless healing. *State v. Houck,* 32 Wn.2d 681, 203 P.2d 693 (1949).

The defendant is licensed for chiropractic and drugless healing pursuant to RCW 18.25.010 and RCW 18.36.040 respectively. RCW 18.25.030 delimits the practice of a chiropractor by stating that he

> may adjust by hand any articulation of the spine, but shall not prescribe for or administer to any person any medicine or drugs now or hereafter included in materia medica, nor practice obstetrics, nor practice osteopathy or surgery.

Drugless therapeutics is defined by RCW 18.36.010 to include

> hydrotherapy, dietetics, electrotherapy, radiography, sanitation, suggestion, mechanical and manual manipulation . . . , but shall in no way include the giving, prescribing or recommending of pharmaceutic drugs and poisons for internal use, . . .

RCW 18.71.020 penalizes those who practice medicine and surgery without first being licensed as a physician and surgeon. RCW 18.71.010 states that:

> The practice of medicine and surgery consists of the use of drugs or medicinal preparations in or upon human beings, *severing or penetrating the tissues of human*

*beings,* and the use of any and all other methods in the treatment of diseases, injuries, deformities, or other physical or mental conditions, but shall not include the practice of chiropractic as defined in RCW 18.25.030.

(Italics ours.)

In *State v. Lydon,* 170 Wash. 354, 16 P.2d 848 (1932) the practice of surgery was defined as the severance or penetration of human tissue. *Accord, State v. Kelsey,* 46 Wn.2d 617, 283 P.2d 982 (1955). As noted above, a statute prohibits chiropractors from practicing surgery. The provisions pertaining to drugless healers do not contain this proscription, but surgery is not included on the list of permissible practices. Drugless healers may engage only in practices permitted by statute. *State v. Houck, supra. State v. Kelsey, supra,* therefore, held that drugless healers may not practice surgery. From these cases we conclude there are two grounds for rejecting defendant's contention that he should be allowed to practice these procedures.

First, *State v. Houck, supra,* advises that the administration of a hypodermic injection would be a surgical procedure. Since both galvanic acupuncture and the taking of blood samples involve the penetration of human tissue, they likewise constitute surgery. Second, neither procedure is specifically authorized by the licensing statutes.

The defendant's chief concern on this appeal is the matter of blood sampling. He contends that it was the intent of the legislature to prohibit the penetration of tissue, *i.e.,* surgery, for the purpose of treatment only, and the penetration of tissue for diagnostic purposes should be allowed. He stresses that: (1) he is fully qualified to take blood samples and obtain a diagnosis with the assistance of area laboratory services; (2) blood samples are an important diagnostic tool—essential for the determination of whether and how his patients should be treated; and (3) he would be subject to malpractice liability for treating a patient on the basis of a faulty diagnosis. We are not going to dispute these three points. But it should be noted also that defend-

ant's education and training may in fact exceed the requirements of state law; other practitioners in his field may not be so well qualified.[1] Defendant cannot seriously argue that he alone should be exempted from the statutory restrictions. Moreover, contrary to defendant's suggestion, we find nothing in the statutes as written or as construed indicating that a differentiation should be made between diagnosis and treatment. We recognize that the taking of a blood sample may be a relatively simple endeavor, and that a laboratory will perform an analysis and state its conclusions. Nevertheless, converting that analysis into a correct diagnosis may be a much more complex matter.

As stated above, the scope of practice of persons engaged in the various healing sciences is exclusively a matter of legislative concern.

[T]he legislature may adopt such regulations and restrictions of the healing arts as it may consider necessary for the public good, and the courts will not question the wisdom or desirability of such legislative requirements, so long as there is any reasonable basis upon which the legislative determination can rest.

---

[1]Defendant completed a 4-year course at both the Los Angeles College of Chiropractic and Sierra State University. He studied and satisfactorily completed a large number of medically oriented courses in these schools, and has augmented his education at other institutions as well. Included in his course of study have been such topics as symptomatology and diagnosis, anatomy, physiology, pathology, and toxicology. The defendant testified that he passed two of the examinations given to physicians and surgeons in this state. He was trained by the Navy as a hospital corpsman and served 18 months on ward duty. There he learned, among other things, to give injections and draw blood samples for analysis.

RCW 18.25.020 requires licensed chiropractors to have completed 4,000 hours of classroom instruction. (Defendant completed 4,418 hours at the Los Angeles College of Chiropractic alone.) License applicants are also required to pass an examination in anatomy, physiology, hygiene, symptomatology, nerve tracing, chiropractic-orthopedy, and principles of chiropractic and adjusting. RCW 18.25.030. Applicants for a license to practice drugless therapeutics must have completed three 36-week sessions at an approved school, and must pass examinations in anatomy, physiology, hygiene, symptomatology, urinalysis, dietetics, hydrotherapy, radiography, electrotherapy, gynecology, obstetrics, psychology, and mechanical and manual manipulation. RCW 18.36.040.

*Ellestad v. Swayze*, 15 Wn.2d 281, 291, 130 P.2d 349 (1942). The legislature could well have decided that surgical methods of diagnosis exceeded the qualifications of licensed chiropractors and drugless healers in general; thus the prohibition of the severance or penetration of human tissue by chiropractors and drugless healers should be without exception.[2] *See State v. Kelsey, supra.*

Defendant also argues that he should be allowed to engage in galvanic acupuncture, since it is a form of electrotherapy, and drugless healers are permitted by statute to practice electrotherapy. We are not informed by the record whether or not electrotherapy involves skin penetration. We assume that it does not because of the prohibition mentioned above. We are, however, informed by the record that galvanic acupuncture involves the insertion of needles into various portions of the body and the application of electric current. This process is even more involved than acupuncture, which is now only in the experimental stage by the medical profession in this country. If we were to allow the extension of permissible electrotherapy in this manner, we would involve the judiciary in a medical matter which, according to the constitution, belongs with the legislature. Since galvanic acupuncture does involve the penetration of human tissue, we hold that it is not an authorized practice for chiropractors and drugless healers.

Defendant finally maintains that he should not be prohibited from prescribing vitamins, minerals, and food supplements. We have aleady noted that chiropractors are prohibited by RCW 18.25.030 from prescribing drugs and that drugless healers are similarly limited by RCW 18.36.010. Drugs are not defined in any of the statutes per-

[2]Substitute Senate Bill 2186 was introduced into the 43rd Legislature, which would have allowed naturopaths to, among other things, draw blood for diagnostic purposes. The bill also called for the compilation of drugs which a naturopath would be allowed to prescribe. The bill passed the Senate on April 6, 1973. Senate Journal, 1st Ex. Sess. 1203 (1973). It was sent to the House Committee on Social and Health Services on April 7, 1973. House Journal, 1st Ex. Sess. 1902 (1973).

The bill never emerged from the committee.

taining to chiropractic and drugless healing, but in *Kelly v. Carroll*, 36 Wn.2d 482, 219 P.2d 79, 19 A.L.R.2d 1174 (1950) a drug was defined as a medicine given internally or externally for the treatment of disease.

We are aware, however, that the drugless healers certified in the food sciences may treat disease through the use of "foods, water, nonmedicinal herbs, roots, barks and all natural food elements other than pharmaceutic drugs and poisons . . ." RCW 18.36.020. We therefore hold that chiropractors may not give or prescribe any substance *for the purpose of treating disease,* and drugless healers may only prescribe those nonpharmaceutic substances listed in RCW 18.36.020. Vitamin and mineral tablets are not on this list. Food supplements in the form of "natural food elements" are permissible. Although the substances brought into issue by the defendant are available without prescription in retail stores, these items may nevertheless be dangerous when improperly used. Furthermore, the prescription of these substances *for the treatment of disease* has a great potential for abuse if left to the discretion of those practitioners whose training and licensing requirements are limited as in this case. The legislature therefore was within its constitutional authority in limiting the practice of chiropractic and drugless healing in this respect.

We have examined the defendant's remaining assignments of error and find them to be without substantial merit.

Affirmed.

ARMSTRONG and PETRIE, JJ., concur.

Petition for rehearing denied November 18, 1974.

Review denied by Supreme Court December 16, 1974.