[No. 5683–1. Division One. July 16, 1979.]

LESTER E. GRIFFITH, *Appellant,* v. THE DEPART-
MENT OF MOTOR VEHICLES, ET AL,
*Respondents.*

Andersen, J., concurs by separate opinion.

*George Wm. Cody, McGary, Cole, Bakun & Coolidge,* and *Charles J. Coolidge,* for appellant.

*Slade Gorton, Attorney General,* and *John H. Keith, Assistant,* for respondents.

Dore, J.—Lester Griffith, a naturopathic physician, appeals from an adverse ruling on summary judgment holding (1) the practice of "natural childbirth" is the practice of medicine and surgery; and (2) from a permanent injunction prohibiting him from practicing obstetrics (caring for women during pregnancy, labor and puerperium).

ISSUES

1. Whether the practice of "natural childbirth" is permissible under a license granted to Lester E. Griffith, a naturopath, pursuant to RCW 18.36 (the drugless healing law), or whether it is the practice of medicine and surgery (RCW 18.71).

2. Whether the drugless healing law (RCW 18.36) is unconstitutional.

3. Whether the trial court erred in granting a permanent injunction against the plaintiff naturopath enjoining him from practicing obstetrics, including natural childbirth.

FACTS

Lester Griffith is a graduate of the National College of Naturopathic Medicine and is licensed as a drugless healer, pursuant to RCW 18.36.010.[1] On October 13, 1976, the Director of the Department of Motor Vehicles served on Lester Griffith the following notice to cease and desist:

To: LESTER E. GRIFFITH, N.D.

In the course of an official investigation conducted by the Division of Professional Licensing, the Director has been informed and believes that you have cared for women during pregnancy, labor, and the puerperium for compensation when you have not received a license to practice midwifery or to practice medicine in the State of Washington.

---

[1]Located in Portland, Oregon.

The academic curriculum requirements of the National College of Naturopathic Medicine entail 5,326 academic hours, 1,080 clinic intern hours, and 80 hours in obstetrics. The third and fourth clinical years include modern laboratory and diagnostic techniques, as well as patient contact. During these years, the practical aspects of naturopathic therapies are taught, including such methods as nutrition and homeopathy. The National College of Naturopathic Medicine prescribes courses in biochemistry, histology, embryology, human anatomy and physiology, pathology, microbiology, immunology, first aid and medical emergencies, basic medical sciences, public health, nutrition, clinical pathology and laboratory diagnosis, roentgenological diagnosis, body mechanics, botanical and homeopathic pharmacology, pharmacodynamics, principles of minor surgery, neurological diagnosis, preceptorship, obstetrics and obstetrical minor surgery, orthopedics, proctology, gynecology, gastro–intestinal diseases, endocrinology, acute infectious diseases, pediatrics, trophology, and others.

Now, therefore, you, your agents and employees are notified to cease and desist from the practice of medicine or midwifery and specifically from the care of women during pregnancy, labor, and the puerperium for compensation, or otherwise, until such time as you are properly licensed by the State of Washington.

Dr. Griffith responded by bringing a declaratory judgment action against the Department of Motor Vehicles and the director alleging that (1) RCW 18.36 does not prohibit Griffith from caring for women during pregnancy, labor, and the puerperium; (2) a licensed practitioner under RCW 18.36 is not affected by the prohibition requirement of RCW 18.50 regulating midwifery; and (3) RCW 18.36 violates the fourteenth amendment to the United States Constitution.

The Department and its director answered the complaint by counterclaiming for a permanent injunction pursuant to RCW 18.71.025 prohibiting persons from practicing medicine without a valid license. On motion the trial court granted summary judgment in favor of the Department and its director, holding that *State v. Houck,* 32 Wn.2d 681, 203 P.2d 693 (1949), was controlling.

Plaintiff appeals contending that the matter should not have been resolved on summary judgment for there is a clear issue of fact as to the difference between the practices undertaken by Griffith in the course of "natural childbirth" and those dealt with in the case of *State v. Houck, supra.* Plaintiff further contends that the trial court erred in granting injunctive relief without requiring any proof that any practice had been undertaken by plaintiff dealing with childbirth.

Prior to the notice to cease and desist, on February 13, 1976, Griffith submitted to the Department an application for examination for a license to practice midwifery which request was denied on the basis that the applicant presented no proof of graduation from a school of midwifery.

Subsequent to the denial of Griffith's request to be granted a midwifery license, he presented the Department

with evidence that he was a graduate of the National College of Naturopathic Medicine, Portland, Oregon, and that during his study at that institution he received training in obstetrics and obstetrical minor surgery, gynecology, human anatomy and physiology, biochemistry, clinical diagnosis, laboratory diagnosis, embryology, first aid and medical emergencies, and pediatrics.

That in granting summary judgment, the court signed a permanent injunction, reading:

> . . . IT IS ORDERED: . . . Lester E. Griffith be permanently restrained and enjoined from the practice of medicine and surgery, specifically the practice of obstetrics, as defined above, by caring for women during pregnancy, labor and the puerperium unless and until a valid certificate to practice medicine and surgery or midwifery in the State of Washington is secured by Lester E. Griffith.[2]

## DECISION

ISSUE 1:

The trial court in its memorandum opinion queried "Was it the intention of the legislature to make the practice of obstetrics outside the scope of practice given to drugless healers?" The trial court ruled that *State v. Houck, supra,* answered this question and held that the practice of obstetrics was outside the scope of practice given to drugless healers. In *Houck,* the Supreme Court at page 691 defines "Obstetrics" as "The branch of medicine that cares for women during pregnancy, labor, and the puerperium,'" and "Drugless practitioner" as "'Any person who practises or holds himself out in any way as practising the treatment of any ailment, disease, defect or disability of the human body by manipulation, adjustment, manual or electrotherapy or by any similar method.'" At page 692 the court, in relying upon the prior case of *State ex rel. Walker v. Dean,* 155 Wash. 383, 284 P. 756 (1930), reasoned:

> "It was the manifest intention of the legislature to prohibit the holders of restricted licenses from practicing

---

[2]Obstetrics was defined in the order as "Obstetrics is the branch of medicine that cares for women during pregnancy, labor and the puerperium."

branches of the art of healing not embraced within the subjects upon which the licensee had been examined, and which by his certificate he was authorized to practice."
. . .
The title to chapter 36, and § 13 of the act (Rem. Rev. Stat., § 10123), when liberally construed in connection with the other statutes relating to the care of the sick and afflicted, proves conclusively that the legislature intended to treat drugless healing as it did the other schools of practice—that is, that *drugless healers should be allowed to do only those acts included within the definition which we have heretofore quoted.*

(Italics ours.)

■ Plaintiff contends that the practices as described to be undertaken by *Houck* are full obstetrical practices and as such, outside the bounds of a license issued under RCW 18.36. However, the question which remains unanswered, either in light of the court's decision or in the brief of the respondent, is whether or not a practice akin to that of a midwife (RCW 18.50.010) is allowed under the drugless therapeutics act as a lawful practice by an individual licensed thereunder.

In *Kelly v. Carroll,* 36 Wn.2d 482, 219 P.2d 79, 19 A.L.R.2d 1174 (1950), it was made clear at pages 491–92 that drugless healers are prohibited from practicing obstetrics:

The third proposition is that drugless healers do not belong to a school of medicine. This is also a corollary to the first proposition. As was pointed out in *State v. Houck, supra,* they do not study in medical colleges as defined by statute, but in drugless healing schools. Thus, the particular school of their attendance is not a medical school, nor can such a school be said to adhere to a school of medicine, in the sense that a particular school is identified with a recognized and distinct approach to medical practice or opinion. This is so, notwithstanding the fact that some subjects taught in medical schools are also taught in the drugless healing schools.

In *State v. Houck, supra* and *State v. Lydon, supra* [170 Wash. 354, 16 P.2d 848 (1932)] it was urged that the purpose of requiring drugless healers to study obstetrics

was to qualify them to practice obstetrics. The *Houck* case *settled that contention by definitely holding drugless healers could not practice obstetrics.* Treatment of the sick by unskilled persons may be injurious. A knowledge of what *not* to do may, in some instances, be indispensable to the patient's safety.

(Some italics ours.)

Recently this court in *State v. Wilson,* 11 Wn. App. 916, 528 P.2d 279 (1974), decided a case adversely to the drugless healers which factually comes very close to the subject case. *Wilson* concerned the "scope of practice of chiropractors and drugless healers in this state." The defendant was enjoined by the trial court from using needles or other means to penetrate human tissues, from practicing acupuncture, and from prescribing or administering any drugs. On appeal the defendant objected to the specific application of the injunction, arguing that he should be allowed to take blood samples for diagnostic purposes, practice galvanic acupuncture (a form of electrotherapy), and prescribe or give vitamins, minerals, and food supplements to his patients.

*Wilson,* in affirming the injunction prohibiting the chiropractor or drugless healer from practicing acupuncture and from prescribing or administering any drugs, stated at pages 917, 920:

We note initially that article 20, section 2 of the Washington State Constitution vests exclusive authority in the legislature to "regulate the practice of medicine and surgery, and the sale of drugs and medicines." It thus becomes necessary to examine the statutes which regulate the practice of chiropractic and drugless healing. *State v. Houck,* 32 Wn.2d 681, 203 P.2d 693 (1949).

The defendant is licensed for chiropractic and drugless healing pursuant to RCW 18.25.010 and RCW 18.36.040 respectively. RCW 18.25.030 delimits the practice of a chiropractor by stating that he

may adjust by hand any articulation of the spine, but shall not prescribe for or administer to any person any medicine or drugs now or hereafter included in materia

medica, nor practice obstetrics, nor practice osteopathy or surgery.

Drugless therapeutics is defined by RCW 18.36.010 to include

hydrotherapy, dietetics, electrotherapy, radiography, sanitation, suggestion, mechanical and manual manipulation . . ., but shall in no way include the giving, prescribing or recommending of pharmaceutic drugs and poisons for internal use, . . .

. . .

Defendant also argues that he should be allowed to engage in galvanic acupuncture, since it is a form of electrotherapy, and drugless healers are permitted by statute to practice electrotherapy. We are not informed by the record whether or not electrotherapy involves skin penetration. We assume that it does not because of the prohibition mentioned above. We are, however, informed by the record that galvanic acupuncture involves the insertion of needles into various portions of the body and the application of electric current. This process is even more involved than acupuncture, which is now only in the experimental stage by the medical profession in this country. *If we were to allow the extension of permissible electrotherapy in this manner, we would involve the judiciary in a medical matter which, according to the constitution, belongs with the legislature. Since galvanic acupuncture does involve the penetration of human tissue, we hold that it is not an authorized practice for chiropractors and drugless healers.*

(Italics ours.)

From reading the record and examining the case law in this state, it is clear that the practice of assisting pregnant women to give birth to their children sought to be undertaken by plaintiff through "natural childbirth" is the practice of obstetrics which drugless healers are prohibited from performing. The *Houck* case specifically held that drugless healers could not practice obstetrics. We concur with the trial court in granting summary judgment in favor of the Department and its director.

730

Issue 2: RCW 18.36 is constitutional.

Appellant contends that RCW 18.36 violates the fourteenth amendment to the United States Constitution.

Article 20, section 2 of the Washington State Constitution vests exclusive authority in the legislature to "regulate the practice of medicine and surgery, and the sale of drugs and medicines."

In *Ketcham v. King County Medical Serv. Corp.*, 81 Wn.2d 565, 502 P.2d 1197 (1972) (Hunter, J., dissenting), the court stated at pages 583-84:

> The test to be applied in prescribing the police power, and which should be applied in this case, was stated in *State v. Laitinen*, 77 Wn.2d 130, 459 P.2d 789 (1969), at 132:
>
>> In prescribing the police power, all that is constitutionally required of the legislature is that a state of facts can reasonably be conceived to exist which would justify the legislation. If the courts can reasonably conceive of such a state of facts, they must presume that such facts actually did exist and that the statute being tested was passed with reference to them. [Citations omitted.]
>
>> Accordingly, if a state of facts can reasonably be conceived that will sustain a classification under the police power, there is a presumption that such facts exist. *Ace Fireworks Co. v. Tacoma*, 76 Wn.2d 207, 455 P.2d 935 (1969); *State v. Persinger*, 62 Wn.2d 362, 382 P.2d 497 (1963); *Shea v. Olson, supra* [185 Wash. 143, 53 P.2d 615, 111 A.L.R. 998 (1936)]. It is not the court's function to decide whether the statute is sound or unsound, wise or unwise, effectual or ineffectual— but only whether it is within the legislature's constitutional powers to enact it. This comports with the general democratic principle that powers of self–government have been largely reserved by the people to be exercised through their legislatures and not their courts.

■ It is a legitimate regulatory expression where the legislature seeks to prevent the inadequately trained and uneducated from practicing in areas in which competency is lacking. Griffith has not been excluded from his chosen

profession as he claims but he is being limited to a practice authorized by his license in accordance with a determination to divide and classify the healing arts, and in accordance with the extent of the licensee's education and experience requirements under such license. There can be no dispute with the reasonableness of such classification. Childbearing is a significant personal event that has serious and extremely important societal interests connected to it. The State may properly condition the right of one to pursue a lawful occupation where it intimately affects the public health, safety, morals, or general welfare. *See* 16A C.J.S. *Constitutional Law* § 669, at 1072. This is not a denial of due process or equal protection of the law.

We hold that RCW 18.36 constitutes a reasonable exercise of the state's police power and is reasonably related to the public health, safety and welfare.

The State admits that a midwife under RCW 18.50.010 presently can do what Griffith wants to do. In view of the relatively little training that is required for a midwife as compared to the extensive academic training and experience of Griffith, it would indicate that the action of the Department of Motor Vehicles in rejecting his application for a midwifery license may be arbitrary and capricious. At least it appears that the Department's action has little or anything to do with protecting the health standards of the public if a slightly trained midwife can practice limited obstetrics, while a highly qualified naturopath is refused that right entirely. However, the Department's denial of Griffith's request for a midwifery license is not an issue in this case.

ISSUE 3: Permanent injunction proper.

Griffith argues that there are no facts before the court that establish that he is actually practicing obstetrics by "natural childbirth" and that in his declaratory judgment action he was only hypothetically setting forth a future contemplated activity and that the Superior Court had no jurisdiction to grant an injunction of any kind. His position

is untenable. The constitution does not permit courts to give advisory opinions. The Department of Motor Vehicles and its director alleged that their investigation determined that Griffith was performing obstetrics and was violating his license. In bringing this declaratory judgment action, Griffith admitted he was aiding pregnant women give birth to their children through advice on "natural childbirth" but he claimed that his actions were authorized by his naturopathic license. Based on his admissions, a justiciable issue was joined enabling the courts to assume jurisdiction and render a decision. Having lost his case, Griffith cannot now challenge the jurisdiction of the court.

■ While the court in the exercise of its discretion with respect to the grant or denial of injunctive relief is not controlled by technical legal rules, the power is not an arbitrary and unlimited one, nor does it constitute the mere whimsical will of the court, but rather it is the exercise of a sound judicial discretion, the court being informed and guided by the established principles, rules, and practice of equity jurisprudence. An injunction should never be ordered merely because it will do no harm or because there is a threat of very great injury. 42 Am. Jur. 2d *Injunctions* §§ 25, 26.

We believe that petitioner Griffith reads the language of the injunction too literally. The definition of obstetrics must be construed to include only the care for a woman during pregnancy, labor and the puerperium that *deals* with the same. Likewise, the subject order logically proscribes those practices of medicine, surgery and midwifery involving obstetrics. But if a drugless healer's practice includes procedures of care independent of the practices of medicine and surgery or midwifery, which constitute obstetrics, those parts of his practice would not be affected by such an order any more than would be the practice of dentistry to a licensed dentist. We can immediately conceive of at least two examples where the drugless healer could continue to render legitimate naturopathic services to a pregnant woman (a) in the case of a patient who has been

receiving regular care and attention from a naturopathic physician and becomes pregnant; or (b) that of a female who has sought the particular type of expertise and care of a drugless healer because she is pregnant and particularly concerned with her nutritional balance and personal biochemistry.

We hold that the language of the permanent injunction, enjoining the plaintiff Griffith from the practice of medicine and surgery or midwifery, specifically including the practice of obstetrics, effectively expresses the prohibition against the petitioner, prohibiting him from the practice of medicine and surgery.

We affirm.

SWANSON, A.C.J., concurs.

ANDERSEN, J. (concurring in the result)—Here the trial court found as follows:

2.2 *Plaintiff's license status*: Lester E. Griffith is licensed in the State of Washington to practice drugless healing, as a naturopath, pursuant to chapter 18.36 RCW and is not licensed to practice medicine and surgery pursuant to chapter 18.71 RCW, and is not licensed to practice as a midwife pursuant to chapter 18.50 RCW.

2.3 *Obstetrics*: Obstetrics is the branch of medicine that cares for women during pregnancy, labor and the puerperium.

2.4 *Scope of practice*: Obstetrics is outside the scope of practice given to individuals licensed to practice pursuant to chapter 18.36 RCW.

There was no genuine issue of material fact as to any of this. CR 56.

Based on the foregoing, "Lester E. Griffith [was] permanently restrained and enjoined from the practice of medicine and surgery, specifically the practice of obstetrics, as defined above, by caring for women during pregnancy, labor and the puerperium unless and until a valid certificate to practice medicine and surgery or midwifery in the State of Washington is secured by Lester E. Griffith."

The trial court's action was squarely in accordance with the State Supreme Court's holding in *State v. Houck,* 32 Wn.2d 681, 203 P.2d 693 (1949), and on that basis, I agree that it should be affirmed. *See also State v. Wilson,* 11 Wn. App. 916, 528 P.2d 279 (1974).

For these reasons, I concur in the result of the majority opinion.

Reconsideration denied October 18, 1979.